**LOCAL 246 UTILITY WORKERS UNION OF AMERICA; Local 47 International Brotherhood of Electrical Workers; Cyril Douglas Payne; Walter R. Pierce, Plaintiffs–Appellants,**

v.

**SOUTHERN CALIFORNIA EDISON COMPANY, Defendant–Appellee.**

No. 94–56051.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 13, 1995.

Decided May 6, 1996.

Anthony R. Segall, Pasadena, California, for plaintiffs-appellants.

Kenneth E. Johnson, Los Angeles, California, for defendant-appellee.

Before: FLETCHER, CANBY, and HAWKINS, Circuit Judges.

CANBY, Circuit Judge:

## I.

Two employees, joined by their unions, brought this action against their employer, Southern California Edison Company, alleging that Edison's method of calculating overtime compensation for partially disabled workers violates the Fair Labor Standards Act ("Act" or "FLSA"), 29 U.S.C. §§ 201–19. The question at issue is whether certain supplemental payments, designed to bring the wage of a partially disabled worker up to his or her predisability wage level, should be included in the base figure upon which time-and-a-half overtime pay is calculated. For many years, Edison had not included such payments in determining the amount to be paid for overtime, and until recently the unions had voiced no objection. The district court found that the relevant terms of the Collective Bargaining Agreement ("Agreement") and the Comprehensive Disability Plan ("Plan") were ambiguous. It then ruled that the parties' longstanding practical construction of the agreements indicated that their intent was not to treat the supplemental payments as part of the regular base wage for purposes of calculating overtime rates. The district court therefore granted Edison's motion for summary judgment. We reverse.[1]

## II.

Edison negotiated collective bargaining agreements with each of the plaintiff unions, covering the bargaining units in which the two plaintiff employees worked. Edison also separately negotiated the benefit Plan. Under the Plan,

> An employee who recovers from a disability but cannot perform his/her regular and customary work and is reassigned to other duties at a lower weekly wage than his/her former Regular Weekly Wage (as defined in Section 11) will, upon reassignment to such other duties and lower classification, receive benefits that are designed to provide supplemental disability payments equal to the difference between the em-

---

1. We review a grant of summary judgment *de novo*. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995), *cert. denied*, — U.S. —, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

ployee's former Regular Weekly Wage at the time of disability and the weekly wage applicable to his/her current lower classification.

The Regular Weekly Wage is defined in the Plan as "[t]hat compensation paid each covered employee for services of 40 hours per week rendered at the specific straight time hourly wage rate last in effect prior to the commencement of disability." In other words, an employee reassigned to a lower classification because of a disability receives, on his or her pay check, wages for hours worked at the lower rate as well as the "supplemental payment" constituting the difference between the lower wage rate and the employee's previous regular weekly wage. At least since November 1992, Edison has paid all of these supplemental payments from its general funds, not from a trust. Payroll taxes are deducted from the supplemental payments.

■ Employees working overtime must be compensated at not less than one-and-one-half times the regular rate of compensation. 29 U.S.C. § 207(a)(1). Because Edison does not consider the supplemental payments as part of the employee's regular rate of compensation, it computes overtime pay at one-and-one-half times the wage rate applicable to the lower classification. The employees contend that this method of computation violates 29 U.S.C. § 207(a)(1) by paying them for overtime at a rate less than one-and-one-half times their regular rate, properly calculated. We conclude that the employees are correct.

. Edison argues that its exclusion of the supplemental payments from the overtime pay calculation is justified under the final clause of 29 U.S.C. § 207(e)(2). That section excludes from the "regular rate"

> payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, in-

curred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and *other similar payments to an employee which are not made as compensation for his hours of employment....*

29 U.S.C. § 207(e)(2) (emphasis added). We conclude, however, that the supplemental payments fail to qualify as "similar payments which are not made as compensation for [the employee's] hours of employment." The entire function of these supplemental payments is to ensure that the workers are paid for their new, lower-classified work at the rate that they used to be paid for their pre-disability work. The payments necessarily compensate for hours of employment because they supplement a regular wage paid for work performed. As a consequence, they may not be excluded from the regular rate.

Edison argues that the Plan's reference to a "regular weekly wage" implies that the supplemental payments are not tied to hours but rather to the regular weekly wage, which is set at forty hours per week. But pay or salary that is paid by the week or longer period is still counted in calculating the regular hourly rate. 29 C.F.R. § 778.109. The key point is that the pay or salary is compensation for work, and the regular rate therefore must be calculated by dividing all compensation paid for a particular week by the number of hours worked in that week. *Id.* Thus it makes no difference whether the supplemental payments are tied to a regular weekly wage or regular hourly wage.[2]

Edison further argues that the supplemental payments are not compensation for hours worked, but rather are paid because the employee is disabled. The two purposes, however, are not mutually exclusive. It is true that these supplemental payments are normally paid only to employees disabled from performing a higher-paying job, but their function is to permit those employees to be paid at a higher rate for working at an otherwise lower-paying job. Because the payments are compensation for that lower-

---

**2.** Even if payments to employees are not measured by the number of hours spent at work, that fact alone does not qualify them for exclusion under section 207(e)(2). *Reich v. Interstate*

*Brands Corp.,* 57 F.3d 574, 577 (7th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 699, 133 L.Ed.2d 656 (1996).

classification work, they are not exempt under section 207(e)(2). Moreover, in some instances supplemental payments are made to employees who are not disabled. The letter that Edison sent to one of the employees receiving supplemental payments states:

> Should you receive a *full medical release* for your regular and customary occupation, and when an opening occurs, you are eligible to bid, transfer, or apply through the Company's JOIS system to become a candidate for your former classification. If this should occur, you will be treated like all other SCE employees in contention for the position. If your regular and customary occupation is not available, or should you fail at attempts to re-obtain that job, your benefits will continue as described above.

(emphasis in original). Thus, a supplemental payment is not solely tied to disability, but is akin to a so-called "red circle" rate—a rate higher than that normally called for by the job—to which an employee may be entitled for any number of reasons. Such "red circle" wages are clearly compensation for hours worked.[3] Although it is rare for Edison to make supplemental payments to employees who are no longer disabled at all, the fact that the Plan permits the practice lends support to our conclusion that supplemental benefits are best characterized as compensation for hours worked.

Because Edison has failed to demonstrate that supplemental payments may be excluded from the regular rate of compensation, it must include these supplemental payments in the regular rate used to calculate overtime. *See Idaho Sheet Metal Works, Inc. v. Wirtz,* 383 U.S. 190, 209, 86 S.Ct. 737, 748–49, 15 L.Ed.2d 694 (1966) (employer bears burden of establishing exemption under portion of Fair Labor Standards Act).

### III.

■■ Edison contends that, even if its argument under section 207(e)(2) is rejected, some of the supplemental payments should be excluded from calculation of the regular rate under section 207(e)(4). That section provides that an employee's regular rate of pay shall not include

> contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for providing ... accident, or health insurance or similar benefits for employees....

29 U.S.C. § 207(e)(4). On this record, however, there is no indication that any of the supplemental payments *to the employees* consisted of contributions made by Edison irrevocably to a trust. Section 207(e)(4) deals with contributions by the employer, not payments to the employee. If the employer meets the requirements of section 207(e)(4) in making irrevocable contributions to a trust, then those contributions will not be added to the regular pay rate on the theory that they are a form of indirect bonus to the worker. *See* 29 C.F.R. § 778.214(c) ("It should be emphasized that it is the employer's contribution made pursuant to the benefit plan that is excluded from or included in the regular rate according to whether or not the requirements set forth in § 778.215 are met."). The supplemental payments made to the employees pursuant to the Plan were measured by the difference between the employees' pre-disability pay rates and their pay rates at the lower-paying jobs they performed after disability. Edison has not shown that any part of this differential was composed of payments that Edison made irrevocably to a trust. Accordingly, nothing in section 207(e)(4) causes us to retreat from our conclusion that the supplemental payments must be included in calculating the employees' regular rate of pay.

---

**3.** Regulations implementing the Equal Pay Act, 29 U.S.C. § 206(d), a part of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, recognize the concept of a red circle rate:

> For a variety of reasons an employer may require an employee, for a short period, to perform the work of a job classification other than the employee's regular classification. If the employee's rate for his or her regular job is higher than the rate usually paid for the work to which the employee is temporarily reassigned, the employer may continue to pay the higher rate under the "red circle" principle.
>
> 29 C.F.R. § 1620.26(b).

## IV.

The district erred in basing its decision on the intent of the parties to the Agreements and the Plan rather than on the Act. "[T]he regular rate of pay cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee[;] it must be drawn from what happens under the employment contract." *Bay Ridge Operating Co. v. Aaron,* 334 U.S. 446, 464, 68 S.Ct. 1186, 1196, 92 L.Ed. 1502 (1948). "The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments. It is not an arbitrary label chosen by the parties; it is an actual fact." *Walling v. Youngerman–Reynolds Hardwood Co.,* 325 U.S. 419, 424, 65 S.Ct. 1242, 1245, 89 L.Ed. 1705 (1945). Here the question is whether the agreed supplemental payments were compensation for hours of employment within the meaning of the Act, and we conclude that they were. An agreement by the parties to treat the payments differently is not determinative. *See Walling v. Harnischfeger Corp.,* 325 U.S. 427, 432, 65 S.Ct. 1246, 1249, 89 L.Ed. 1711 (1945) (collectively bargained bonus must "automatically enter into the computation of the regular rate for purposes of [section 207(a) ] regardless of any contract provision to the contrary").

For similar reasons, we reject Edison's contention that the district court's judgment should be affirmed because the employees failed to exhaust their contractual remedies under the Agreement and the Plan. The minimum wage and overtime provisions of the Act are guarantees to individual workers that may not be waived through collective bargaining. *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945). Indeed, the Supreme Court has even held that a contractual determination of a grievance *against* the employee did not bar an action on the same facts under the Fair Labor Standards Act, "[b]ecause Congress intended to give individual employees the right to bring their minimum-wage claims under the FLSA in court, and because these congressionally granted FLSA rights are best protected in a judicial rather than in

an arbitral forum." *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 745, 101 S.Ct. 1437, 1447, 67 L.Ed.2d 641 (1981).

In urging an exhaustion requirement, Edison relies unduly on *Wren v. Sletten Constr. Co.,* 654 F.2d 529 (9th Cir.1981). In *Wren,* we held that the employees' claim was "essentially on the contract," and thus the traditional exhaustion requirements applied. *Id.* at 535. Here, the employees' claim against Edison is clearly based on the statute; there is no dispute over what the Agreement or Plan provides. As *Wren* itself recognizes, a claim based on substantive rights under the Fair Labor Standards Act is not subject to an exhaustion requirement. *Id.* (citing *Barrentine,* 450 U.S. at 738–46, 101 S.Ct. at 1443–48). Because the employees' claim was confined to an interpretation of the Act and our decision rests on an interpretation of the Act, there is no requirement of exhaustion.

## V.

The employees request that we order judgment to be entered in their favor awarding them liquidated damages under 29 U.S.C. § 216(b). Edison, on the other hand, argues that it established a good faith defense and cannot be held for liquidated damages. We decline to rule either way on this question in the first instance. Section 216(b) provides that an employer who violates the Act shall be liable for unpaid overtime compensation plus an additional equal amount as liquidated damages. These liquidated damages represent compensation, and not a penalty. *Brooklyn Sav. Bank,* 324 U.S. at 707, 65 S.Ct. at 902. "Double damages are the norm, single damages the exception...." *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 310 (7th Cir.1986).

Liquidated damages are no longer automatic, however. The Portal–to–Portal Act of 1947, 29 U.S.C. §§ 251–62, provided the employer with a defense to liquidated damages. Under 29 U.S.C. § 260, the employer has the burden of establishing subjective and objective good faith in its violation of the FLSA. If the employer fails to carry that burden, liquidated damages are manda-

tory. *EEOC v. First Citizens Bank,* 758 F.2d 397, 403 (9th Cir.), *cert. denied,* 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 228 (1985).

 The employer's burden is to establish that it had "an honest intention to ascertain and follow the dictates of the Act" and that it had "reasonable grounds for believing that [its] conduct complie[d] with the Act." *Marshall v. Brunner,* 668 F.2d 748, 753 (3rd Cir.1982); *see also Brock v. Shirk,* 833 F.2d 1326, 1330 (9th Cir.1987), *vacated on other grounds sub nom. Shirk v. McLaughlin,* 488 U.S. 806, 109 S.Ct. 38, 102 L.Ed.2d 18 (1988). It is true, as Edison argues, that the district court found that Edison had excluded the supplemental payments for years without objection from the Unions. The district court's finding that the parties may have acquiesced in a particular treatment of the supplemental payments does not, however, constitute a finding on the two elements constituting a defense. The question is whether Edison subjectively intended honestly to obey the Act, and whether it had reasonable grounds to believe that its conduct complied with the Act. *See Marshall,* 668 F.2d at 753. "Good faith is an honest intention to ascertain what the [FLSA] requires and to act in accordance with it." *First Citizens Bank,* 758 F.2d at 403. Because the good faith defense of section 260 includes subjective as well as objective elements, it would be inappropriate for this court to rule on the defense in the first instance.

 Moreover, if the employer carries its burden of establishing subjective and objective good faith, the court is not required to deny all liquidated damages. "[T]he court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216...." 29 U.S.C. § 260; *see also* 29 C.F.R. § 790.22(c). This discretionary ruling, too, is clearly for the district court, subject to review in this court only for abuse of discretion. *See First Citizens Bank,* 758 F.2d at 402. Accordingly, we leave the liquidated damages issue to the district court on remand.

## VI.

The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**