Alexis M. HERMAN, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

ANDERSON FLOOR COMPANY, INC., a Corporation, Scott E. Anderson and Jill M. Anderson, Individual, Defendants.

No. 97–C–97.

United States District Court,
E.D. Wisconsin.

June 29, 1998.

Leonard A. Grossman, United States Department of Labor Office of the Solicitor, Chicago, IL, for Plaintiff.

Bruce Chesshire, Shneidman, Myers, Dowling, Blumenfield, Ehlke, Hawks & Domer, Milwaukee, WI, for Defendants.

## DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

CALLAHAN, United States Magistrate Judge.

### Background

This is an action brought by the plaintiff, Alexis M. Herman, Secretary of Labor, United States Department of Labor ("the Secretary"), against defendants Anderson Floor Company, Inc. ("Anderson Floor"), Scott E. Anderson and Jill M. Anderson (all three defendants collectively referred to, where appropriate, as "Anderson"), for alleged violations of §§ 7, 11 and 15 of the Fair Labor Standards Act of 1938, as amended ("FLSA" or "the Act"), 29 U.S.C. § 201, et seq., pursuant to § 17 of the Act; and to recover unpaid overtime compensation owing to the defendants' employees, together with an equal additional amount as liquidated damages, pursuant to § 16(c) of the Act.

Currently pending before the court is the "Secretary's Motion for Partial Summary Judgment." In her motion, the Secretary seeks a ruling that the method of compensation utilized by Anderson does not comply with the provisions of the Act (and applicable regulations). The parties have filed extensive and detailed submissions setting forth their respective positions on the Secretary's motion. The motion is fully briefed and ready for resolution.

The court has jurisdiction over this action pursuant to §§ 16 and 17 of the Act, and 28 U.S.C. §§ 1331 and 1345. Venue is proper in this district. The parties have consented to magistrate judge jurisdiction. See, 28 U.S.C. § 636(c).

For the reasons which follow, the "Secretary's Motion for Partial Summary Judgment" is granted.

### Facts

In accordance with Local Rule 6.05 (E.D.Wis.) the Secretary, and Anderson filed proposed findings of fact along with their briefs and evidentiary materials. Consistent with Rule 6.05(d) the court will conclude that there is no genuine material issue as to any proposed finding of fact to which no response was set out or as to which the parties agreed there was no dispute. Such being the case, the following facts are undisputed.

Defendant Anderson Floor Company, Inc. ("Anderson Floor"), is and at all relevant times was a Wisconsin corporation with an office and a place of business within Milwaukee County, Wisconsin, at 5964 South 28th Street, Greenfield, Wisconsin, within the jurisdiction of this court, and is and at all relevant times was engaged in the sale and installation of wooden floors and related activities.

Defendant Scott E. Anderson, an individual, has an office and a place of business within Milwaukee County, Wisconsin, at 5964 South 28th Street, Greenfield, Wisconsin, within the jurisdiction of this court, and at all relevant times acted directly or indirectly in the interest of the corporate defendant in relation to its employees.

Defendant Jill M. Anderson, an individual, has an office and a place of business within Milwaukee County, Wisconsin, at 5964 South 28th Street, Greenfield, Wisconsin, within the jurisdiction of this court, and at all relevant times acted directly or indirectly in the inter-

est of the corporate defendant in relation to its employees.

Anderson Floor is and at all relevant times was engaged in related activities performed through unified operation or common control for a common business purpose, and is and at all relevant times was an enterprise within the meaning of § 3(r) of the Act, 29 U.S.C. § 203.

Anderson Floor is and at all relevant times was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of § 3(s)(1)(A) of the Act in that said enterprise at all relevant times had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that had been moved in or produced for commerce by any person and in that said enterprise has and has had an annual gross volume of sales made or business done of not less than $500,000.00.

Defendants are employers under the Act.

Defendants contract to install, sand and repair floors in new and old construction projects using various kinds of wood, including various hardwoods, plywood products and particle board products.

Anderson Floor charges customers for the labor and materials necessary for each job. A job labor figure is determined for each job. The labor charges to the customer are generally based on the square footage of the job, the materials to be used and the difficulty of the job. In some instances the labor charges may be based on the number of sheets of certain types of materials.

On each job, a job labor figure is determined. The job labor figures is usually one-half of the amount charged to the customer for labor on the job.

Crews of employees are sent by defendants to perform the preparation and installation of the floor. Each job for which the crew is scheduled is paid on a job basis.

The crew foreman assigned to the job is responsible for measuring the job and figuring the labor from a predetermined square footage or per underlayment sheet figure, as well as other labor figures that would apply to the job, provided by the defendants' office.

Only the foreman has knowledge of the predetermined figures.

The crew foreman keeps track of which employee worked on the job and the total man hours that the crew took to complete the job. This information is provided by the crew foreman on preprinted job cards given to him from Anderson Floor.

The foreman makes various calculations related to the labor costs on each job. Some of these calculations appear on the job cards.

Prior to April 1996, the defendants used a bookkeeping system known as the McBee system on ledgers, referred to as McBee sheets. Combined weekly-hours and gross wages were gathered on weekly "statements" or time sheets and the transferred from the employees' weekly time sheets to the McBee sheets.

Prior to April 1996, the defendants maintained no written record of the stipulated or agreed hourly rates of the employees. The McBee sheets contained no information regarding the stipulated regular rate for the employees, nor did they contain any breakdown showing regular and overtime hours or compensation.

Following a switch-over from the manual McBee system to a computerized payroll system in early 1996, the defendants continued to use essentially the same system to obtain raw wages and hours information from the foreman or crew leaders. However, the computerized payroll system adopted in 1996 was provided with a stipulated hourly rate of each employee.

Computer-generated check stubs and records resulting from the new system contain a breakdown showing regular pay, overtime, drive time premium pay and additional information. The gross wages and hours shown on the computer-generated check stubs are identical to the gross wages on the weekly time sheet of the employee. The calculation of overtime by the computer program does not affect the gross wages of the employee.

Other facts relevant to the Secretary's motion will be referenced throughout the remainder of this decision.

## Analysis

### 1. Standards for Summary Judgment.

Rule 56(c), Fed.R.Civ.P., provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a as a matter of law." *Salima v. Scherwood South, Inc.*, 38 F.3d 929, 931 (7th Cir.1994); *Transportation Communications International Union v. CSX Transportation, Inc.*, 30 F.3d 903, 904 (7th Cir.1994). Summary judgment is not a discretionary remedy and must be granted when the movant is entitled to it as a matter of law. *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir.1994). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Associated Milk Producers, Inc. v. Meadow Gold Dairies, Inc.*, 27 F.3d 268, 270 (7th Cir.1994), presenting only a scintilla of evidence will not suffice to oppose a motion for summary judgment, *Walker v. Shansky*, 28 F.3d 666, 671 (7th Cir.1994). Nor will some metaphysical doubt as to the material facts suffice. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

Moreover, the disputed facts must be those that might affect the outcome of the suit to properly preclude summary judgment. *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir.1994). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Therefore, the non-moving party is required to go beyond the pleadings with affidavits, depositions, answers to interrogatories, and admissions on file to designate specific facts showing a genuine issue for trial. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

The party moving for summary judgment bears the initial burden of showing that there are no material facts in dispute, and that judgment should be entered in his favor. *Hannon v. Turnage*, 892 F.2d 653, 656 (7th Cir.), cert. denied, 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990). A party moving for summary judgment may satisfy this initial burden by pointing to the adverse party's failure to introduce sufficient evidence to support each essential element of the cause of action alleged. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The question is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505. Thus,· "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

### 2. The Fair Labor Standards Act.

29 U.S.C. § 207(a) states, in pertinent part, that:

... Except as otherwise provided in this section, no employer shall employ any of his employees who in any work week is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce, or in the production of goods for commerce, for a work week longer than 40 hours unless' such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

In other words, § 207(a) requires employers to compensate employees at one and one-half times the regular rate for all hours worked over 40 hours in one week. The regular rate is the hourly rate actually paid to the employee for the normal, non-overtime work week for which he is employed. *Aaron v. City of Wichita*, 54 F.3d 652, 655 (10th Cir.1995), (citing, 149 *Madison Avenue Corp. v. Asselta*, 331 U.S. 199, 203, 67 S.Ct. 1178, 1181, 91 L.Ed. 1432 (1947)).

■ While employers and employees are free to establish the regular rate at any point above the minimum wage as they see fit, "this freedom of contract does not include the right to compute the regular rate in a wholly unrealistic and artificial manner...." *Baker v. Barnard Construction Company, Inc.*, 863 F.Supp. 1498, 1500 (D.N.M.1993), citing, *Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945). Therefore, courts are to carefully scrutinize "regular rate" designations to make sure employees are getting the full excess compensation called for under the Act. *Baker*, 863 F.Supp. at 1500 (citing, *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 463, 68 S.Ct. 1186, 1196, 92 L.Ed. 1502 (1948)).

Indeed, the Supreme Court has held that when determining the number of hours a "salary" is intended to cover, a contract between the parties is not necessarily determinative. *149 Madison Avenue*, 331 U.S. at 204, 67 S.Ct. at 1181. The court stated that the regular rate is an " 'actual fact' and in testing the validity of a wage agreement under the Act the courts are required to look beyond that which the parties have purported to do." *Id.*, (citing, *Walling*, 325 U.S. at 424, 65 S.Ct. at 1244).

■ In other words, "the regular rate of pay cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee[;] it must be drawn from what happens under the employment contract." *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 464, 68 S.Ct. 1186, 1196, 92 L.Ed. 1502 (1948). "The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the work week, exclusive of overtime payments. It is not an arbitrary label chosen by the parties; it is an actual fact." *Walling*, 325 U.S. at 424, 65 S.Ct. at 1245. An agreement by the parties to treat certain payments differently than as compensation for hours of employment within the meaning of the Act is not determinative. See, *Walling v. Harnischfeger Corp.*, 325 U.S. 427, 432, 65 S.Ct. 1246, 1249, 89 L.Ed. 1711 (1945). The key point in calculating the regular rate of an employee's compensation for purposes of the Act is whether it is compensation for work performed during

that work week. (See, *Local 246, Utility Workers Union of America v. Southern California Edison Co.*, 83 F.3d 292, 295 (9th Cir.1996)).

To some degree, the Act itself defines the term "regular rate." Specifically, 29 U.S.C. § 207(e) states:

As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee ...

Section 207(e) goes on to identify those items of remuneration which are not to be included in determining the "regular rate" at which an employee is employed. Among those items to be excluded in determining the regular rate are:

Sums paid in recognition of services performed during a given period if ..., (a) both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly ...

29 U.S.C. § 207(e)(3)(a).

■ Finally, it is employer upon whom the burden rests in demonstrating that certain payments it has made should not be included in determining its employees' "regular rate." See,*Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 209, 86 S.Ct. 737, 748–49, 15 L.Ed.2d 694 (1966) (Employer bears the burden of establishing exemption under portion of the Fair Labor Standards Act.); see also, *Local 246, supra*, 83 F.3d at 296.

### 3. Application of the FLSA to the Facts.

■ In this action, the Secretary argues that all monies paid to Anderson Floor employees on a weekly basis should be included in determining Anderson Floor's employees' "regular rate" for overtime computation purposes. In contrast, Anderson argues that certain portions of the funds paid to Anderson Floor's employees should be excluded in determining the "regular rate." This is because, according to Anderson, those portions are discretionary "premium pay-

ments" which meet each of the criteria called for by § 207(e)(3)(a). In this regard, the parties agree that to be excluded from the "regular rate" by virtue of § 207(e)(3)(a), a payment must meet the following criteria: (1) the employer must retain discretion as to payment; (2) the employer must retain discretion as to amount; (3) the employer must retain discretion with regard to the payment until near the end of the period which it covers; and, (4) the payment must not be paid pursuant to any prior contract, agreement or promise causing the employee to expect such payments regularly. (See, Secretary's Brief in Support of Motion for Partial Summary Judgment, p. 12, and defendants' Brief in Opposition, p. 2). And so the issue is crystallized. The question that this court must resolve is whether or not the undisputed facts show that the "premium payments" made by the defendants to Anderson Floor's employees qualify for exclusion from the "regular rate" computation.

In order to better analyze the parties' respective positions, it is helpful to review the "Labor Contract" Anderson Floor has entered into with its employees. The Labor Contract has numerous provisions. Among them are the following:

1. Anderson Floor Company, Inc. pays its employees with a company check on a weekly basis. New employees will have a three week holding period before receiving their first paycheck in order to keep in sync with all other employees already being paid. All weeks are numbered such as in a calendar year. That week number and dates associated with that week number are listed on the employees weekly paycheck. Payday is on Friday of each week.

\* \* \* \* \* \*

5. Each job that the crew is scheduled will be paid on a per job basis. Crew foreman assigned to the job will be responsible for measuring the job and figuring the job labor figure from a predetermined square footage or per underlayment sheet figure, as well as other labor figures that would apply to that job provided by the office. Only the foreman will have knowledge of the predetermined figures.

6. Crew foreman will also be responsible for keeping track of which employee worked on the job and the total man hours that the crew took to complete the job. This information is to be provided by the crew foreman on the preprinted job cards given to him from Anderson Floor Company, Inc. This information will only be used for informational purposes in the case of a callback or in the case of a labor figure needed to provide cost information to a customer of Anderson Floor Company, Inc.

7. Crew foreman will divide up total job labor figure among all employees who worked on that particular job. The determination of each employees' wages by the crew foreman will be based on each employees' contribution to the job. i.e.

a. Was the employee on time.

b. Did they come prepared to the job with a lunch and all of their personal tools needed.

c. Was any employee caught breaking on the job or did they keep themselves busy.

d. Did they follow what they were instructed to do by the crew foreman.

e. Overall job attitude and courtesy as outlined in Employee responsibilities sheet provided by Anderson Floor Company, Inc.

8. Once the crew foreman takes all of the above into account, the job labor figure is split up among each employee on that particular job accordingly.

\* \* \* \* \* \*

(Anderson Deposition Exhibit No. 4).

According to Anderson, the Labor Contract is implemented in the following fashion. The "job labor figure" is the total amount of money available for payment to all of the employees who work on the job. During the job no employee is assured of receiving any part of the job labor figure other than the agreed-upon hourly wage and any statutory overtime on the hourly wage, if applicable. If, when the job is completed, excess monies

are available from the job labor figure over and above the hourly wages and any statutory overtime thereon, the foreman, in his sole discretion, distributes such excess to the members of the crew as bonuses or "premiums", in such amounts, if any, as he, in his sole judgment and discretion, determines are appropriate, taking into consideration each employee's contribution to the job, including the factors listed in paragraph 7 of the Labor Contract. (Defendants' Response to Secretary's Statement of Undisputed Facts, ¶ 2). The employee's contribution to the job is determined by the foreman in his sole judgment and discretion upon the completion of the job. If the foreman determines that a particular employee contributed little or nothing to the job, he may award that employee no premium over and above his hourly wage. Finally, if, because the job takes much longer than anticipated, the job labor figure is inadequate to cover the crew's hourly wages, then no premium payments will be made. In such a case, Anderson Floor pays all amounts necessary to ensure that each employee receives his hourly pay. including any applicable statutory overtime pay. (Id.)

Again, according to Anderson, although the job cards themselves generally do not contain overtime computations, the foreman separately calculates time-and-one-half either with a calculator or on separate sheets of paper. According to Jill Anderson, the foremen have been instructed to keep track of the overtime hours. Upon completion of a job, the foreman first determines how much hourly pay is owed to each employee for time spent on the job. He calculates time and-one-half whenever an employee has worked close to 40 hours during the week and whenever he or she works more than eight hours on any given day. Finally, according to Jill Anderson, job cards showing work by an employee during his first few weeks of employment indicate the employee's agreed-upon hourly rate because during those weeks he receives only the applicable hourly rate and no premium pay.

The pay system that Anderson has implemented is certainly, at least from the defendants' standpoint, a favorable one. As stated previously, on each job a job labor figure is determined. The job labor figure is usually one-half of the amount charged to the customer for labor on the job. Obviously it is in the interest of the defendants to have the labor costs on a particular job remain within the predetermined job labor figure. If the labor costs exceed the predetermined job labor figure funds which would otherwise have constituted the company's "profit" for labor on the job will have to be dipped into in order to pay the crew members. By conveying to crew members that they are eligible for "premium pay" over and above their regular hourly wage, **so long as the labor cost does not exceed the predetermined job labor figure,** the crew members have an incentive to work efficiently and diligently, because that is the only way that they may become eligible to receive such "premium pay."

As noted above, the Act requires that an employer pay its employees time-and-a-half the "regular rate at which he is employed" for any hours in excess of 40 hours per work week. The Act further states that the " 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee ..." (§ 207(e)). The Secretary claims that all money paid to Anderson Floor employees on a weekly basis, including those funds Anderson clubbed "premium pay," must be considered in ascertaining the hourly rate, upon which hourly rate time-and-a-half can be calculated. In contrast, the defendants argue that the amount of "premium pay" with which each employee is "rewarded" by the foreman of a particular job is in the nature of a "bonus." Thus, it must be excluded from the employee's weekly compensation in determining whether the Act has been complied with. In other words, "premium payments" should not be included when determining a particular employee's "regular rate" of pay for a particular work week. Rather, a previously agreed-upon hourly rate is the "regular rate" upon which the time-and-a-half rate is to be calculated.

As previously observed, the compensation system set up by Anderson is one that, from the employer's perspective, make sense. If the employees work efficiently and diligently, Anderson's profit margin is maintained. It also, however, makes some sense from the

employees' perspective as well. If they work efficiently they end up getting paid more money for less hours worked. But, whether the compensation system comports with the Act is another matter.

■■■■ In order to have Anderson's "premium pay" excluded from the determination of its employees' "regular rate" of pay for any particular week in question, Anderson must demonstrate that such "premium pay" meets all four criteria for a discretionary bonus. This is because exemptions to the Act are to be narrowly construed. *Aaron v. City of Wichita, Kansas,* 54 F.3d at 657. And the employer bears the burden of establishing an exemption under the Act. *Local 246,* 83 F.3d at 296; see also, *Idaho Sheet Metal Works, Inc. v. Wirtz,* 383 U.S. at 209, 86 S.Ct. 737; *Aaron v. City of Wichita,* 54 F.3d at 657. ("[T]he employer must show that the employee fits 'plainly and unmistakenly within the exemption's terms'—under both the 'salary' test and the 'duties' test."); *Donovan v. United Video, Inc.,* 725 F.2d 577, 581 (10th Cir.1984) ("An · employer must prove that an employee is exempt from the FLSA by 'clear and affirmative' evidence.") In my opinion, Anderson has failed to do so. And recall that the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

To be sure, Anderson has produced the affidavits of Jeffrey R. Minerley, Joel L. Trotter and Clifford M. Anderson. All three affidavits aver essentially the same thing. All three individuals aver that when they were first hired, they and Scott Anderson agreed that the particular affiant's starting rate of pay would be a particular amount. Each affiant also states that he understood that on any job there might be additional monies available over and above the crew member's hourly rates if the job labor rate built into the company's contract with the owner or other purchaser exceeded such hourly rates; that it was entirely in the crew foreman's discretion how any such "premium pay" would be distributed among the crew members and whether any individual employee would share in any part of said "premium pay"; that the foreman decided whether and to what extent to pay "premium pay" to any individual member of the crew upon completion of the job; that the foreman, in his sole judgment, had the discretion not to award any premium pay to any particular employee; and, that the foreman based his decision as to how much premium pay to award to any individual crew member based solely on the foreman's assessment of the employee's contribution to the job.

Each affiant also avers that he has served as job foreman for Anderson. Each affiant states in his personal affidavit that:

As job foreman, I am required to know the agreed-upon hourly rate of pay of each member of my crew. When any job is completed, I first determine how much hourly pay is owed to each employee for the time spent on the job. If the employee has worked more than eight hours in a day, I figure time-and-a-half for any time worked in excess of eight hours. If the employee has worked close to more than 40 hours in a week, I figure time-and-a-half for any excess over 40 hours. Even if the employee does not receive any premium pay, I know that the employee is entitled to receive his hourly rate of pay plus any applicable time-and-a-half and write that total for that employee on the job card.

If there is additional money available from the job labor rate for distribution to the crew, I, as foreman, decide upon completion of the job who is to receive premium pay and how much. In making that decision, I assess each employee's over all contribution to the job. In making that assessment, I utilize various factors ... If, in my judgment, the employee has made little or not contribution to the job, I have authority not to award him any premium pay in addition to his hourly wage. There have been occasions when, in my discretion, I have done that. I may also decide to award that employee a nominal or minimal amount of premium pay. On the other hand, if I feel that an employee has made a

conscientious effort and a positive contribution to the job, I generally award that employee a substantial portion of the money available for premium pay.

Sometimes, when the job takes a lot longer than expected, the hourly and, if applicable, overtime wages, exceed the job labor figure on the job. In that case, there is no premium pay. It is my understanding that the Company ensures that the employee receives the full amount of hourly and overtime pay to which he is entitled in his paycheck for that week.

(Affidavits of Minerley, Trotter and Clifford Anderson, ¶¶ 11a–13).

But the affidavits of Minerley, Trotter and Clifford Anderson do not carry the day. The reality, as noted by the Secretary in her reply, is that, according to Anderson Floor records, in 1994 there were a total of 225 employee work weeks. In that year, employees earned more under the "incentive system" in all but 52 of those weeks, i.e., 76% of the time. In 1995, there were 360 employee work weeks. According to Anderson Floor records, employees earned more under the "incentive system" in all but 37 of those work weeks, i.e., approximately 90% of the time. During the period from June 1996 through October 1997, Anderson Floor employees worked a total of 646 employee work weeks. There were only 109 of such employee weeks in which Anderson Floor records did not show "premium pay." In other words, during this period of time employees received "premium pay" at least 84% of the time. (See, Secretary's Reply Brief, pp. 5–6).

All this is to say that the practice of Anderson Floor comported with the expectation created by the Labor Contract entered into with its employees. As noted previously, the Labor Contract stated, inter alia:

7. Crew foreman *will* divide up total job labor figure among all employees who worked on that particular job . . . (emphasis provided).

Indeed, the employment contracts executed by Minerly, Trotter and Clifford Anderson in 1996 (Reply Exhibits D, E and F), contain some language different from that found in the "Labor Contract," marked as Anderson deposition Exhibit 4. Yet even those employment contracts contain the following language:

6. Crew foreman will divide up total job labor figure among all employees who worked on that particular job. . . . Any monies left over from the total job labor cost after the hourly wages and time-and-one-half wages are deducted is a premium pay. Premium pay is wages earned above and over the hourly rate of pay for completing the assignment on a timely basis. The premium pay (if any) **will be divided among each employee based on that employee's contribution to the job**
. . .

\* \* \* \* \* \*

7. How quickly the crew completes the assignment **will determine the amount of premium pay to be spread among the employees.** There may not always be any premium pay left over after wages are figured, therefore premium pay is not guaranteed for any given job.

In order to be excluded from computation of the "regular rate" Anderson Floor's "premium pay" must meet the following criteria: (1) the employer must retain discretion as to payment; (2) the employer must retain discretion as to amount; (3) the employer must retain discretion with regard to the payment until near the end of the period which it covers; and, (4) the payment must not be paid pursuant to any prior contract, agreement or promise causing the employee to expect such payments regularly. In the instant action, Anderson Floor clearly committed itself to making premium payments to its employees, although the amount of "premium pay" on any particular job was not certain. In other words, in my opinion the "premium pay" was an integral part of the wage structure; and, the Labor Contract, i.e., labor agreement, entered into between Anderson Floor and its employees created an expectation of "premium pay" on a regular basis.

In her brief the Secretary attempts to analogize Anderson's compensation system to those "schemes" or "devices" to evade overtime requirements found in 29 C.F.R. § 778.500. To the extent the Secretary in-

vites the court to find the defendants' compensation system to constitute such a "scheme" or "device," I decline the Secretary's invitation to do so, at least at this time. It is enough to say that the compensation system utilized by the defendants does not comply with the provisions of the Act in that the "premium payments" paid to Anderson Floor employees pursuant to labor agreements entered into between Anderson Floor and its employees are not excludable when determining the "regular rate" at which such employees are employed and, therefore, on which overtime compensation must be based. Thus, the plaintiff's motion for partial summary judgment must be granted.

**NOW THEREFORE IT IS ORDERED** that the "Plaintiff's Motion for Partial Summary Judgment" is **GRANTED.**

A scheduling conference to discuss the further pretrial processing of this action will be conducted on Thursday, July 23, 1998, at 9:45 a.m., in Room 445, United States Courthouse, 517 E. Wisconsin Avenue, Milwaukee, Wisconsin. Any attorney located more than 100 miles from the Courthouse may participate in this scheduling conference by telephone. If you wish to participate by telephone please contact my chambers with a phone number where you can be reached at the above-scheduled time. The court will initiate the call.