**DULUTH LIGHTHOUSE FOR THE BLIND, Plaintiff,**

v.

**C.G. BRETTING MANUFACTURING CO., INC., Defendant.**

**Civ. No. 99–1601JRT/RLE.**

United States District Court,
D. Minnesota.

Oct. 12, 2000.

Frederick A. Dudderar, Jr., Robert Thomas Torgerson, Hanft Fride O'Brien Harries Swelbar & Burns, Duluth, MN, for plaintiff.

Michael William Haag, Andresen Haag Paciotti & Butterworth, Duluth, MN James F. Harrington, Mary Sue Anderson, Julie M. Falk, Ruder Ware & Michler, Wausau, MI, for defendant.

## ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Motion of the Defendant C.G. Bretting Manufacturing Co., Inc. ("Bretting"), to exclude the damages report, and expert testimony, of Paul Almirall ("Almirall"), who is the former Chief Executive Officer of the Plaintiff Duluth Lighthouse for the Blind ("Lighthouse"). A Hearing on the Motion was conducted on September 22, 2000, at which time, the Lighthouse appeared by R. Thomas Torgerson, Esq., and Bretting appeared by James F. Harrington, Esq. For reasons which follow, Bretting's Motion to Exclude is denied.

### II. *Factual and Procedural History*

As fully addressed in our Report and Recommendation of July 24, 2000, this dispute

arises out of the Lighthouse's purchase of an allegedly defective tissue rewinder ("rewinder") from Bretting. In order to facilitate the orderly progression of this action toward Trial, we issued a Pretrial Scheduling Order on December 21, 1999, which established deadlines for, among other activities, the service of Rule 26(a)(1) disclosures, and the disclosure of expert witnesses and reports. See, *Pretrial Order dated December 21, 1999.* Under the terms of that Order, the Lighthouse was required to identify, and disclose, its experts by February 15, 2000, and was required to produce its expert reports by May 1, 2000. *Id.* in turn, Bretting was required to identify its expert witnesses by March 15, 2000, and to produce its expert reports by June 1, 2000. *Id.*

On January 14, 2000, the Lighthouse provided its initial Rule 26(a)(1) disclosures to Bretting. See, *Affidavit of Mary Sue Anderson, Ex. 4.* These disclosures revealed the types, and estimated amounts, of the damages that the Lighthouse was seeking. See, *Affidavit of R. Thomas Torgerson, Ex. 1.* However, at that time, Almirall was not designated as a witness who was expected to proffer testimony on the issue of damages but, rather, was listed as a witness with "knowledge of the Project, the Purchase Agreement, the Financing Agreement, Intercreditor Agreement, and the representations made by Bretting personnel during sale discussions, installation problems and equipment rejection communications." *·Anderson Aff., Ex. 4.* Subsequently, on February 11, 2000, the Lighthouse identified Richard Seils, and Walter Dean, as its experts. See, *Anderson Aff., Ex. 5.* Almirall was not designated as an expert at that time, or at any time thereafter.[1]

In its initial disclosures, the Lighthouse advised that it was conducting an investigation in order to determine the appropriate amount of damages that it purportedly sustained from Bretting's sale of the allegedly defective rewinder. By May 5, 2000, Bretting had yet to receive the Lighthouse's damage calculation and, therefore, it requested

the total amount of damages, that were being claimed by Lighthouse, by means of a written Interrogatory. See, *Anderson Aff., Ex. 7.* In response to this Interrogatory, the Lighthouse advised that its damages assessment was ongoing. The Lighthouse contends, however, that, in March of 2000, it made available, to Bretting, the documents upon which its damages calculations are based, including financial, contractual, and manufacturing production data.

On June 12, 2000, Bretting informed the Lighthouse that it considered the Lighthouse's Interrogatory answer to be unresponsive, evasive, and/or incomplete. See, *Anderson Aff., Ex. 8.* In response to this assertion, the Lighthouse informed Bretting that Almirall was working to complete its damages analysis, and that he would not complete it before his deposition, which had been, at that time, scheduled for late July.

Subsequently, on August 18, 2000, the Lighthouse produced a report to Bretting, that included Almirall's damages assessment. According to the Lighthouse, this report was produced as a part of its supplemental answer to Bretting's damages Interrogatory. Several days later—on August 21, 2000—the Lighthouse provided, to Bretting, a package of documents that Almirall had relied upon in formulating his damages computation. See, *Anderson Aff., Exs. 14–15.* Thereafter, on August 28 through 30, 2000, Almirall's deposition was taken. During that deposition, Almirall admitted that he had not begun to prepare his report until July of 2000, and that he had relied upon his training, as a certified public accountant, in preparing his report. See, *Anderson Aff., Ex. 16,* at 465–67. Almirall also testified that, due to time constraints, his damages report was not complete. *Id.* at 482–83.

Since Almirall was not designated as an expert, and because his report was produced several months after the pertinent expert deadline, that was contained in our Pretrial Order, Bretting seeks to exclude Almirall's

---

1. Apparently, on February 18, 2000, the Lighthouse served and filed an Affidavit, that was prepared by Almirall, in which he identified himself as having personal knowledge of facts under-

lying the damages that had been sustained by the Lighthouse. See, *Plaintiff's Memorandum in Opposition,* at 4.

report, and his testimony on damages, at Trial.[2] In support of this approach, Bretting focuses upon this Court's recently published decisions, which address untimely expert disclosures. See, *Transclean Corp. v. Bridgewood Serv., Inc.*, 101 F.Supp.2d 788, 795 (D.Minn.2000); see also, *Transclean Corp. v. Bridgewood Serv., Inc.*, 77 F.Supp.2d 1045, 1064 (D.Minn.1999). In response, the Lighthouse argues that Almirall's report did not violate the Court's Pretrial Order, because he is not expected to proffer testimony as an expert witness. Instead, the Lighthouse contends that, as the CEO of the Lighthouse, Almirall is expected to offer his damages testimony as an employee-expert and, therefore, his opinions are not subject to the expert disclosure requirements of Rule 26(a)(2)(B), Federal Rules of Civil Procedure.

### III. *Discussion*

■ Given the circumstances presented, we conclude that Almirall is a lay expert witness, under Rule 701, Federal Rules of Evidence,[3] which excuses his opinions from the reporting requirements of Rule 26(a)(2)(A), Federal Rules of Civil Procedure, as Almirall is not a "person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." *Rule 26(a)(2)(A), Federal Rules of Civil Procedure.* As a consequence, notwithstanding Bretting's view, that the Lighthouse has blindsided it with respect to Almirall's testimony, we find no violation of the applicable expert disclosure requirements.[4]

■ As we have previously explained, in *Hartzell Manufacturing, Inc. v. American*

Chemical Technologies, Inc., 899 F.Supp. 405, 408 (D.Minn.1995):

*** Rule 701 has been interpreted expansively so as to permit the admission of an opinion, if it is based upon "relevant historical or narrative facts that the witness has perceived," *United States v. Oliver*, 908 F.2d 260, 263 (8th Cir.1990), quoting *Teen–Ed, Inc. v. Kimball Intern., Inc.*, 620 F.2d 399, 403 (3rd Cir.1980), and "if it would help the factfinder determine a matter in issue." *United States v. Oliver*, supra at 263, quoting *Hurst v. United States*, 882 F.2d 306, 312 (8th Cir.1989).

\* \* \* \* \* \*

■ Indeed, our Court of Appeals has concluded that "[p]ersonal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience, is a sufficient foundation for lay opinion testimony." *Burlington Northern R. Co. v. State of Neb.*, 802 F.2d 994, 1004 (8th Cir.1986), citing *Farner v. Paccar, Inc.*, 562 F.2d 518, 520 (8th Cir. 1977), and *Gravely v. Providence Partnership*, 549 F.2d 958, 961 (4th Cir.1977). Moreover, the mere fact that the witness, by virtue of his education, training or experience, is capable of being qualified as an expert, does not serve as a valid objection to his expression of lay opinion testimony. *Farner v. Paccar, Inc.*, supra at 529 (8th Cir.1977). In view of this "modern trend favor[ing] the admission of opinion testimony," some of the former distinctions, between Rule 701 and Rule 702's[5] expert

---

2. At the Hearing, Bretting specifically objected to the Lighthouse's attempt to include waste-related damages in Almirall's report. According to Bretting, waste was not mentioned, as an element of damages, prior to the submission of Almirall's report and, therefore, Bretting was denied the opportunity to investigate that issue within the applicable discovery period.

Further, according to Bretting, several additional sections of Almirall's report contain methodologies, and hypothetical assumptions, that cannot be rebutted, at Trial, without the opportunity to conduct additional discovery.

3. Rule 701 provides as follows:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or infer-

ences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.
*Rule 701, Federal Rules of Civil Procedure.*

4. Moreover, since Rule 26(a)(2) does not apply to Almirall's testimony, we also reject Bretting's contention that Almirall's report, and testimony, should be excluded at Trial because they do not comport with the disclosure particulars of Rule 26(a)(2)(B), Federal Rules of Civil Procedure.

5. Rule 702, Federal Rules of Evidence, states as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in

testimony, may tend to blur somewhat. *Teen–Ed, Inc. v. Kimball Intern., Inc.,* supra at 403. Nevertheless, as recognized by the Court of Appeals for the Third Circuit, certain clear distinctions still exist:

> The essential difference, however is that a qualified expert may answer hypothetical questions. \*\*\* Thus, an expert witness may not only testify from facts or data \*\*\* perceived by him, but also from what is "made known to him at or before the hearing." Fed.R.Evid. 703.

*Id.* at 404.

\*     \*     \*     \*     \*     \*

Given the precedential authorities in this Circuit, it is clear that [an employee lay witness] may testify to his personal observations at the Plaintiff's facility, which relate to the subject matter of this litigation. [Further] \*\*\* he may \*\*\* testify to the knowledge that he has gained from his industry experience, and from his review of the records that have been prepared \*\*\* in the ordinary course of \*\*\* business pursuits. See, *Burlington Northern R. Co. v. State of Neb.,* supra at 1004–05. He is not an expert witness, however, and he may not be prepared as such. Therefore, he is not the proper witness to respond to hypothetical facts or circumstances, nor is he the witness who would be competent to review documents that are extraneous to \*\*\* business records, or his own industry

issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

As to the bases for expert opinion evidence, Rule 703, Federal Rules of Evidence, provides as follows:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

In contrast, the lay witness's opinion testimony must be based upon his or her personal perceptions and, unavoidably, those perceptions must be of a type that are admissible in evidence.

6. We understand that, at some point in time, Almirall left the employment of the Lighthouse,

experience, merely so he would have a basis to form opinion testimony.

*Id.* at 408–409.

From a plain reading, Rule 26(a)(2)(B) contemplates that disclosures be made, and written reports be provided, with respect to those who are experts, within the contemplation of Rules 702, 703, or 705, Federal Rules of Evidence, and who are "retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony." *Rule 26(a)(2)(B), Federal Rules of Civil Procedure.* Here, Almirall is expected to provide employee-expert opinion testimony, and he was not specially retained to provide that testimony,[6] nor is there any evidence that he regularly engages in the provision of expert testimony. Therefore, Almirall falls under the strictures of Rule 701, regardless of whether he relied on any specialized knowledge in formulating his opinions.

We are mindful of Bretting's argument that, in *Minnesota Mining & Manufacturing v. Signtech USA, Ltd.,* 177 F.R.D. 459 (D.Minn.1998), the Court held that employee-experts, such as Almirall, should be treated as Rule 702 experts, who were either "retained," or "specially employed," to provide expert opinion testimony, so as to preclude the potential that such opinions will evade the automatic disclosure requirements of Rule 26(a)(2)(B), Federal Rules of Civil Procedure. Even if we concluded that Almirall was not a Rule 701 lay expert,[7] however, we

but the Record before us does not disclose when that departure occurred and, particularly, its timing vis-à-vis the preparation of Almirall's damages report. We infer, based on the portions of his deposition which were submitted for our review, that the departure occurred in somewhat close proximity to Almirall's deposition. Since Bretting has not raised the argument—namely, that the Almirall report was prepared when he was not an employee of the Lighthouse—and has not submitted anything in support of any such contention, we are unable to conclude that Almirall was "retained," as a Lighthouse employee, in order that he could prepare the challenged damages report.

7. We note, for example, that Rule 26(a)(2) excludes "treating physicians" from the expert disclosure requirements. As explained by the Advisory Committee Notes to the 1993 Amendments to Rule 26(a)(2):

are not persuaded that the Court, in *Signtech*, reached a correct result. While we agree with the Court, in *Signtech*, that it is undesirable for litigants to elude the automatic expert disclosure requirements by guise, contrivance, or artful dodging, we are not empowered to modify the plain language of the Federal Rules so as to secure a result that we think is correct. As the Court carefully explained, in *Navajo Nation v. Norris*, 189 F.R.D. 610, 613 (E.D.Wash.1999), the drafters of the Rule 26(a)(2) could have broadly included employee-experts within the scope of the expert disclosure requirements, but they chose not to do so. *Id.* (Concluding that employee experts who are not specially retained to testify, and who do not routinely perform that function, are not subject to the automatic disclosure requirements of Rule 26(a)(2)).

This conclusion is reinforced by the newly promulgated amendment to Rule 701, Federal Rules of Evidence, which seeks to eliminate the potential that the disclosure requirements, which are attendant to Rule 702 experts, could be evaded by the designation of expert witnesses as lay experts. Unless otherwise affected, on December 1, 2000, the amended Rule 701 will go into effect, and will prohibit lay witnesses from offering opinion testimony that is based upon "scientific, technical, or other specialized knowledge within the scope of Rule 702." *Amended Rule 701, Federal Rules of Civil Procedure.* As such, once the amendment should become effective, a witness who offers specialized testimony would appear to be subject to the expert disclosure requirements of the Rule 26(a)(2). In this respect, the Advisory Committee Notes explain, as follows:

> Under the amendment, a witness' testimony must be scrutinized under the rules regulating expert opinion to the extent

that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702. See generally, *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190 (3rd Cir.1995). By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R.Civ.P. 26 *** by simply calling an expert witness in the guise of a layperson. See, Joseph, *Emerging Expert Issues Under the 1993 Disclosure Amendments to the Federal Rules of Civil Procedure*, 164 F.R.D. 97, 108 (1996) (noting that "there is no good reason to allow what is essentially surprise expert testimony," and that "the Court should be vigilant to preclude manipulative conduct designed to thwart the expert disclosure and discovery process"). See also, *United States v. Figueroa–Lopez*, 125 F.3d 1241, 1246 (9th Cir.1997).

\* \* \* \* \* \*

The amendment does not distinguish between expert and lay witnesses, but rather between expert and lay testimony. Certainly it is possible for the same witness to provide both lay and expert testimony in a single case. (citation omitted). The amendment makes clear that any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil *** Rules.

*Amended Rule 701, Federal Rules of Civil Procedure, Advisory Committee Note.*

Notwithstanding the unambiguous language of the amended Rule 701, the Advisory Committee Notes reflect that, even under the amended Rule, employees with knowledge of

---

The requirement of a written report in paragraph (2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement of a written report.

We think it self-evident that, had it been the intention of the drafters to include all employee-

experts within the disclosure requirements of the Rule, they would not have taken such pains to make clear that only those employees who are "specially employed to provide such testimony," or whose duties "regularly involve the giving of such testimony," are subject to the automatic disclosure requirements. We are not at liberty to read out of a procedural Rule, or ignore unambiguous language, that those drafting the Rule expressly included.

the daily affairs of a business will be allowed to proffer opinions on damages, as Rule 701 witnesses. As expressed by the Advisory Committee:

> [M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. See, e.g., *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3rd Cir.1993) (no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business.) Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business. **The amendment does not purport to change this analysis.**

*Id.* (emphasis added).

These comments suggest that, even after the adoption of the proposed amendment, employee experts, such as Almirall, may not be precluded from offering testimony on the issue of damages while wearing the designation of a Rule 701 lay expert. We need not now decide that issue, however, as the amended Rule 701 has yet to become effective.

Our conclusion, that Almirall is a Rule 701 witness, is further buttressed by the fact that he derives his opinions, as to the damages that are claimed to have been sustained by the Lighthouse, from documents prepared, or retained, in the ordinary course and scope of his former employment. As such, Almirall's damage opinions are predicated on documents and facts to which he had been exposed as the CEO of the Lighthouse. As best as we can tell, Almirall is not opining on mere hypothetical assumptions, which would be the appropriate grist for expert opinion evidence under Rules 702, 703, and 705, of

the Federal Rules of Evidence. Accordingly, the Lighthouse did not violate our Pretrial Order by failing to identify Almirall as an expert, or by failing to provide an expert report, by the expert disclosure deadline of May 1, 2000.[8]

▪ Lastly, Bretting argues that Almirall should be barred from testifying at Trial, on the issue of damages, because the Lighthouse failed to supplement its initial disclosures, and Interrogatory answers, in a timely fashion. Under Rule 26(e)(2), Federal Rules of Civil Procedure, a party who has made a disclosure under Rule 26(a), or who has responded to an Interrogatory, must seasonably amend his prior response "if the party learns that the response is in some material respect incomplete or incorrect." Here, Bretting inquired, on May 5, 2000, into the basis for the Lighthouse's damages calculation and, on June 5, 2000, the Lighthouse responded by advising that its damages computation was ongoing. Thereafter, on August 18, 2000, the Lighthouse provided Almirall's report, and the discovery period closed on September 1, 2000.

Although Bretting informed the Lighthouse that it considered the Lighthouse's answer to the damages Interrogatory to be deficient, at no time did Bretting file a Motion to Compel, or seek other Court intervention. Bretting may not forbear these remedial procedures, and then persuasively urge dereliction on the Lighthouse's part. If the information, which Bretting adjudged to be deficient, were as critical to Bretting as it now contends, we have no reason to believe that Bretting would not have invoked the relief provided by Rule 37, Federal Rules of Civil Procedure, to cure any real deficiencies. Here, Bretting was afforded what appears to have been a full opportunity to question Almirall on his damage computations after the receipt of Almirall's report, and we are presented with no competent showing that additional discovery is required because of some inability, on Almirall's part, to adequately

---

8. While the automatic disclosures, which otherwise would be required by Rule 26(a)(2), can be thwarted by the identification of "treating physicians" as experts, or by the designation of employee-experts, that does not mean that an opposing party would be blind-sided by such identifications, or designations. Nothing pro-

hibits the opposing party from serving Interrogatories, and Requests for Production of Documents, which could exact the same level of opinion disclosures as are contemplated by Rule 26(a)(2), but Bretting, here, did not serve such pointed discovery requests.

respond to Bretting's deposition questioning. Nonetheless, we will allow Bretting an opportunity to demonstrate the need to reopen discovery, on a limited and focused basis, and to designate a rebuttal expert upon a proper showing. We do so only because of the existence, within this jurisdiction, of the Court's ruling, in *Signtech*, which may have lulled Bretting into believing that it could avert the substance of Almirall's report by seeking to strike the report, and the opinions expressed therein, on timeliness, or other procedural grounds. We make clear, however, that any request for additional discovery, or for leave to designate another expert, must be competently supported, and must be limited to an aspect of Almirall's damage computation which eluded a prior opportunity to discover, or to designate pertinent expertise. Such a request should be submitted to the Court forthwith, but only after the requisite completion of a "meet and confer" with the Lighthouse.

NOW, THEREFORE, It is—

ORDERED:

That Bretting's Motion for to Exclude the Damages Report and Expert Testimony of Paul Almirall [Docket No. 34] is denied.