**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DANNY FLORES; ROBERT BARADA; KEVIN WATSON; VY VAN; RAY LARA; DANE WOOLWINE; RIKIMARU NAKAMURA; CHRISTOPHER WENZEL; SHANNON CASILLAS; JAMES JUST; STEVE RODRIGUES; ENRIQUE DEANDA, *Plaintiffs-Appellees/ Cross-Appellants*, | Nos. 14-56421 14-56514 D.C. No. 2:12-cv-04884-JGB- JCG |
| and | |
| CRUZ HERNANDEZ, *Plaintiff-Appellee*, | OPINION |
| and | |
| GILBERT LEE; RENE LOPEZ, *Plaintiffs*, | |
| v. | |
| CITY OF SAN GABRIEL, *Defendant-Appellant/ Cross-Appellee.* | |

Appeal from the United States District Court
for the Central District of California
Jesus G. Bernal, District Judge, Presiding

Argued and Submitted February 10, 2016
Pasadena, California

Filed June 2, 2016

Before: Stephen S. Trott, Andre M. Davis[*],
and John B. Owens, Circuit Judges.

Opinion by Judge Davis;
Concurrence by Judge Owens

## SUMMARY[**]

**Labor Law**

On an appeal and a cross-appeal, the panel affirmed in
part and reversed in part the district court's summary
judgment partially in favor of the plaintiffs in an action under
the Fair Labor Standards Act, alleging that the City of San
Gabriel failed to include payments of unused portions of
police officers' benefits allowances when calculating their

---

[*] The Honorable Andre M. Davis, Senior Circuit Judge for the U.S.
Court of Appeals for the Fourth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

regular rate of pay, resulting in a lower overtime rate and a consequent underpayment of overtime compensation.

The district court agreed with the plaintiffs that the City's cash-in-lieu of benefits payments were not properly excluded from its calculation of the regular rate of pay, except to the extent that the City made payments to trustees or third parties. The district court held that the plaintiffs were restricted to a two-year statute of limitations because the City's violation was not willful.  The district court also found that the City qualified for a partial overtime exemption, limiting its liability for overtime to hours worked in excess of 86 in a 14-day work period.

The panel held that the City's payment of unused benefits must be included in the regular rate of pay and thus in the calculation of the overtime rate for its police officers.  The panel held that the City's violation of the Act was willful because it took no affirmative steps to ensure that its initial designation of its benefits payments complied with the Act and failed to establish that it acted in good faith. Accordingly, the plaintiffs were entitled to a three-year statute of limitations and liquidated damages for the City's violations. The panel also concluded, however, that the City had demonstrated that it qualified for the partial overtime exemption under § 207(k) of the Act, limiting its damages for the overtime violations.

Judge Owens, joined by Judge Trott, wrote that he concurred fully in the majority's opinion but believes that the court's willfulness caselaw is off track.

## COUNSEL

Brian P. Walter (argued) and Alex Y. Wong, Liebert Cassidy Whitmore, Los Angeles, California, for Defendant-Appellant/Cross-Appellee.

Joseph N. Bolander (argued), Brandi L. Harper, and Christopher L. Gaspard, Gaspard Castillo Harper, APC, Ontario, California, for Plaintiffs-Appellees/Cross-Appellants.

## OPINION

DAVIS, Circuit Judge:

Plaintiffs-Appellees and Cross-Appellants Danny Flores, Robert Barada, Kevin Watson, Vy Van, Ray Lara, Dane Woolwine, Rikimaru Nakamura, Christopher Wenzel, Shannon Casillas, James Just, Steve Rodrigues, and Enrique Deanda and Plaintiff-Appellee Cruz Hernandez (collectively, "Plaintiffs") are current or former police officers employed by the City of San Gabriel, California ("City"). The Plaintiffs brought suit against the City for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, alleging that the City failed to include payments of unused portions of the Plaintiffs' benefits allowances when calculating their regular rate of pay, resulting in a lower overtime rate and a consequent underpayment of overtime compensation. The Plaintiffs asserted that the City's violation of the FLSA was "willful," entitling them to a three-year statute of limitations for violations of the Act, and sought to recover their unpaid overtime compensation and liquidated damages.

The City claimed that its cash-in-lieu of benefits payments were properly excluded from the Plaintiffs' regular rate of pay pursuant to two of the Act's statutory exclusions and argued that it qualified for a partial overtime exemption under § 207(k), which allows public agencies employing firefighters or law enforcement officers to designate an alternative work period for purposes of determining overtime. The City denied that any violation of the FLSA was willful and that the Plaintiffs were entitled to liquidated damages.

For the reasons that follow, we conclude that the City's payment of unused benefits must be included in the regular rate of pay and thus in the calculation of the overtime rate for its police officers as well. And because the City took no affirmative steps to ensure that its initial designation of its benefits payments complied with the FLSA and failed to establish that it acted in good faith in excluding those payments from its regular rate of pay, the Plaintiffs are entitled to a three-year statute of limitations and liquidated damages for the City's violations. We also conclude, however, that the City has demonstrated that it qualifies for the partial overtime exemption under § 207(k) of the Act, limiting its damages for the overtime violations alleged here.

## I. BACKGROUND

### A. Statutory background

Under the FLSA, an employer must pay its employees premium overtime compensation of one and one-half times the regular rate of payment for any hours worked in excess of forty in a seven-day work week. *Cleveland v. City of Los Angeles*, 420 F.3d 981, 984–85 (9th Cir. 2005) (citing § 207(a)). The "regular rate" is defined as "all remuneration

for employment paid to, or on behalf of, the employee," subject to a number of exclusions set forth in the Act. § 207(e).  The FLSA also provides "a limited exemption from the overtime limit to public employers of law enforcement personnel or firefighters." *Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999) (citing § 207(k)).  The partial overtime exemption in § 207(k) "increases the overtime limit slightly and it gives the employer greater flexibility to select the work period over which the overtime limit will be calculated."  *Id.* at 1060 (citation omitted).

The FLSA provides a private cause of action for employees to seek unpaid wages owed to them under its provisions.  § 216(b).  The Act has a two-year statute of limitations for claims unless the employer's violation was "willful," in which case the statute of limitations is extended to three years.  § 255(a).  An employer who violates the FLSA's overtime provisions is liable in the amount of the employee's unpaid overtime compensation, in addition to an equal amount in liquidated damages.  § 216(b).  The Act provides a defense to liquidated damages for an employer who establishes that it acted in good faith and had reasonable grounds to believe that its actions did not violate the FLSA. § 260.

## B.  Factual and procedural background

### 1.  Flexible Benefits Plan

The City provides a Flexible Benefits Plan to its employees under which the City furnishes a designated monetary amount to each employee for the purchase of medical, vision, and dental benefits.  All employees are required to use a portion of these funds to purchase vision and

dental benefits.  An employee may decline to use the remainder of these funds to purchase medical benefits only upon proof that the employee has alternate medical coverage, such as through a spouse.  If an employee elects to forgo medical benefits because she has alternate coverage, she may receive the unused portion of her benefits allotment as a cash payment added to her regular paycheck.

In 2009, an employee who declined medical coverage received a payment of $1,036.75 in lieu of benefits each month.  This amount has increased each year, so that employees who declined medical coverage received $1,112.28 in 2010, $1,186.28 in 2011, and $1,304.95 in 2012. This payment appears as a designated line item on an employee's paycheck and is subject to federal and state withholding taxes, Medicare taxes, and garnishment.

In 2009, the City paid $2,389,468.73 to or on behalf of its employees pursuant to its Flexible Benefits Plan, and it paid $1,116,485.77 of that amount, or 46.725% of total plan contributions, to employees for unused benefits.  While the exact figures vary each year, the percentage of the total plan contributions that the City pays to employees for unused benefits has remained somewhat consistent.  In 2010, the City paid $1,086,202.56 to employees for unused benefits, reflecting 42.842% of total plan contributions; in 2011, $1,138,074.13, or 43.934% of total plan contributions; and in 2012, $1,213,880.70, or 45.179% of total plan contributions.

At some time prior to 2003, the City designated its cash-in-lieu of benefits payments as "benefits" that were excluded from its calculation of a recipient's regular rate of pay, and, accordingly, has not included the value of the payments in its

calculation of employees' regular rate of pay.  The City has not revisited its designation since that time.

## 2.  Calculation of overtime

Since at least 1994, the City's police officers have been paid overtime when they have worked more than eighty hours in a fourteen-day work period.  Since at least 2003, the City's eighty-hour/fourteen-day work period has been memorialized in several documents.  A 2003 City resolution concerning the "work week" states that police officers work eighty hours in a bi-weekly period.   This same eighty-hour/fourteen-day work period was restated in the City's Salary, Compensation and Benefit Policy Manual, dated July 3, 2010, and in the 2005–2007 Memorandum of Understanding between the City and the police officers' collective bargaining unit.  Because the City's cash-in-lieu of benefits payments are excluded from its calculation of an officer's regular rate of pay, the benefits payments are not incorporated into the City's calculation of the officer's overtime rate.

## 3.  Litigation between the parties

The Plaintiffs instituted this suit against the City in 2012. Following discovery, both parties moved for partial summary judgment on the Plaintiffs' claims.  The district court agreed with the Plaintiffs that the City's cash-in-lieu of benefits payments were not properly excluded from its calculation of the regular rate of pay, except to the extent that the City makes payments to trustees or third parties. *Flores v. City of San Gabriel*, 969 F. Supp. 2d 1158, 1169–77 (C.D. Cal. 2013) ("*Flores I*").  Finding that the City's violation of the Act was not willful, however, it held that the Plaintiffs were restricted to the two-year statute of limitations for their claims.  *Id.* at

1177. The district court also found that the City qualified for the § 207(k) partial overtime exemption and thus limited the City's liability for overtime to hours worked in excess of eighty-six in a fourteen-day work period. *Id.* at 1177–79. After receiving supplemental briefing, the district court denied the Plaintiffs' motion for partial summary judgment on the issue of liquidated damages and sua sponte entered summary judgment in favor of the City on that issue. *Flores v. City of San Gabriel*, No. CV 12-04884-JDB (JCGx), 2013 WL 5817507, at \*1 (C.D. Cal. Oct. 29, 2013) ("*Flores II*").

The City timely appealed the district court's rulings concerning the exclusion of the cash-in-lieu of benefits payments from the regular rate of pay. The Plaintiffs cross-appealed, challenging the district court's rulings that the payments qualified for exclusion under the Act if made to a trustee or a third party, that the City qualified for a § 207(k) partial overtime exemption, that the applicable statute of limitations was two years, and that the Plaintiffs were not entitled to liquidated damages.

## II. STANDARD OF REVIEW

We review a grant of summary judgment or partial summary judgment de novo, applying the same standard of review as the district court under Federal Rule of Civil Procedure 56. *Adair*, 185 F.3d at 1059; *Local 246 Utility Workers Union of Am. v. S. Cal. Edison Co.*, 83 F.3d 292, 294 n.1 (9th Cir. 1996). Under Rule 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the parties file cross-motions for summary judgment, we review each separately, giving the non-movant

for each motion the benefit of all reasonable inferences. *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008) (citation omitted).

### III. ANALYSIS

"The FLSA is construed liberally in favor of employees; exemptions 'are to be narrowly construed against the employers seeking to assert them . . . .'" *Cleveland*, 420 F.3d at 988 (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). The employer bears the burden of establishing that it qualifies for an exemption under the Act. *Id.* We will not find a FLSA exemption applicable "except [in contexts] plainly and unmistakably within [the given exemption's] terms and spirit." *Id.* (alterations in original) (quoting *Klem v. Cty. of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000)).

### A.  Calculation of regular rate of pay

### 1.  Section 207(e)(2)

The City's primary contention on appeal is that its cash-in-lieu of benefits payments are properly excluded from the regular rate of pay pursuant to § 207(e)(2) because they are not compensation for hours worked by the Plaintiffs. Section 207(e)(2) excludes from the regular rate of pay

> payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's

> interests and properly reimbursable by the
> employer; and other similar payments to an
> employee which are not made as
> compensation for his hours of employment.

The City argues that this final phrase—"other similar payments to an employee which are not made as compensation for his hours of employment"—permits exclusion of any payments that do not depend on when or how much work the employee performs. The City does not contend that its cash-in-lieu of benefits payments are not compensation. Rather, because its payments of the Plaintiffs' unused benefits are not tied to hours worked or amount of services provided by the Plaintiffs, the City reasons, the payments are properly excluded under § 207(e)(2). This is a question of first impression in this and other circuits. While a close question, we conclude that the City's cash-in-lieu of benefits payments may not be excluded under § 207(e)(2) and therefore must be included in the calculation of the Plaintiffs' regular rate of pay.

The Department of Labor's interpretation of § 207(e)(2)'s final phrase is set forth at 29 C.F.R. § 778.224,[1] which

---

[1] Section 778.224 is an interpretative bulletin containing an "official interpretation[] . . . issued by the Administrator on the advice of the Solicitor of Labor, as authorized by the Secretary." 29 C.F.R. § 778.1. "Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference." *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) (citations omitted). Such interpretations are instead "entitled to respect" under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), but only to the extent that the agency's interpretation has the "power to persuade." *Id.* (quoting *Skidmore*, 323 U.S. at 140). Because the City does not challenge

provides, in part:

> Since a variety of miscellaneous payments are paid by an employer to an employee under peculiar circumstances, it was not considered feasible to attempt to list them. They must, however, be "similar" in character to the payments specifically described in section 7(e)(2). It is clear that the clause was not intended to permit the exclusion from the regular rate of payments such as bonuses or the furnishing of facilities like board and lodging which, though not directly attributable to any particular hours of work are, nevertheless, clearly understood to be compensation for services.

29 C.F.R. § 778.224(a). Section 778.224 also provides three examples of payments that constitute "other similar payments" under § 207(e)(2) and are thus properly excluded under that subsection—amounts paid to an employee for the rental of her vehicle; loans or advances made to the employee; and "[t]he cost to the employer of conveniences furnished to the employee such as parking space, restrooms, lockers, on-the-job medical care and recreational facilities." § 778.224(b). The Department of Labor's interpretation of § 207(e)(2) is thus directly contrary to the interpretation of the "other similar payments" clause that the City urges here. Under § 778.224(a), a payment may not be excluded from the regular rate of pay pursuant to § 207(e)(2) if it is generally understood as compensation for work, even though the

---

§ 778.224 as unpersuasive, we consider it here without expressing an opinion on its persuasiveness.

payment is not directly tied to specific hours worked by an employee.  And indeed, the examples given in § 778.224(a) of payments that were not intended to be excluded under the "other similar payments" clause, such as bonuses or room and board, are commonly considered to be compensation even though such payments do not fluctuate in accordance with particular hours worked by an employee.

We have similarly interpreted the "other similar payments" clause to focus on whether the character of the payment was compensation for work.  In *Local 246 Utility Workers Union of America v. Southern California Edison Co.*, the employer argued that payments made to supplement the wages of disabled workers performing lower-wage work than they had performed prior to their disability were not "made as compensation for [the employee's] hours of employment" because the workers were paid a weekly, not hourly, wage.  *Local 246*, 83 F.3d at 295 (alteration in original).  We rejected this argument, explaining that "[t]he key point is that the pay or salary is *compensation for work*" and "[t]hus it makes no difference whether the supplemental payments are tied to a regular *weekly* wage or regular *hourly* wage." *Id.* (emphasis added).  In other words, the question of whether a particular payment falls within the "other similar payments" clause does not turn on whether the payment is tied to an hourly wage, but instead turns on whether the payment is a form of compensation for performing work. Indeed, we opined that, "[e]ven if payments to employees are not measured by the number of hours spent at work, that fact alone does not qualify them for exclusion under section 207(e)(2)." *Id.* at 295 n.2 (citing *Reich v. Interstate Brands Corp.*, 57 F.3d 574, 577 (7th Cir. 1995)).

The City contends that *Local 246* must not be read so broadly because the distinction at issue there was between weekly and hourly wages, not between compensation that was tied to hours worked and compensation that was not. That is true. However, the City fails to grapple fully with our reasoning for rejecting the employer's distinction between weekly and hourly wages—that the "key point" is whether the payment is "compensation for work"—and makes no mention of our observation that payments that "are not measured by the number of hours spent at work" are not automatically excludable under § 207(e)(2). This reasoning forecloses the City's interpretation of § 207(e)(2).

Neither *Reich v. Interstate Brands Corp.* nor *Minizza v. Stone Container Corp. Corrugated Container Division East Plant*, 842 F.2d 1456 (3d Cir. 1988), persuades us that our reading of § 207(e)(2) is incorrect. *Reich* concerned the classification of payments made to bakers for working a schedule without two consecutive days off. 57 F.3d at 575–76. While the Seventh Circuit concluded that the "other similar payments" clause "refers to other payments that do not depend at all on when or how much work is performed," it rejected the employers' interpretation that the clause excluded any payment "not measured by the number of hours spent at work," the same reading of the statute that the City espouses here. *Id.* at 577–78. The *Reich* court determined that a payment for working an inconvenient schedule is unlike vacation pay and the reimbursement of expenses—the other two kinds of payment enumerated in § 207(e)(2)—and is instead similar to "a higher base rate compensating the employee for smelly or risky tasks, foul-tempered supervisors, or inability to take consecutive days off." *Id.* at 578–79. Accordingly, the court held that the schedule payments could not be excluded under § 207(e)(2). *Id.* At

bottom, the Seventh Circuit's reading of the statute is not so different from our own—both look to whether the payment at issue is generally understood as compensation to the employee, not whether the payment is tied to specific hours worked by the employee.

In *Minizza*, the Third Circuit considered the treatment of lump sum payments made to employees pursuant to a collective bargaining agreement. 842 F.2d at 1458. The payments were made in lieu of a wage increase and as an inducement to ratify the agreement. *Id.* The Third Circuit determined that these lump sum payments were properly excluded under § 207(e)(2), rejecting the district court's conclusion that the payments could not be excluded because they were not sufficiently similar to vacation time and reimbursements. *Id.* at 1461–62. The Third Circuit interpreted § 207(e)(2)'s "other similar payments" clause to encompass "payments not tied to hours of compensation, of which payments for idle hours and reimbursements are only two examples." *Id.* at 1461. This reading, too, ultimately focuses on whether a given payment is a form of compensation for an employee's service or, like vacation time and reimbursements, is instead a payment that would not generally be considered compensation for an employee's work. Admittedly, the Third Circuit's greater focus on a direct tie to hours worked or services provided hews more closely to the interpretation that the City urges here. We decline to adopt a similar requirement. We observe, however, because the purpose of the payments in *Minizza* was to secure the employees' ratification of a collective bargaining agreement, such payments are not compensation for work performed, and would similarly be excludable under our interpretation of § 207(e)(2).

Accordingly, consistent with our precedent and the Department of Labor's interpretation, we focus our inquiry on whether a given payment is properly characterized as compensation, regardless of whether the payment is specifically tied to the hours an employee works, when determining whether that payment falls under § 207(e)(2)'s "other similar payments" clause.

As noted previously, the City does not contend that its cash-in-lieu of benefits payments are excluded from the regular rate of pay because they are not compensation, but rather because they are not compensation for hours of work performed or an amount of services provided. Even if the City had not made this concession, however, we would conclude that the payments at issue here are properly considered compensation for work. The other payments we have found to be excluded under § 207(e)(2)'s "other similar payments" clause are payments for non-working time, similar to vacation or sick time, which are expressly excluded under § 207(e)(2). *See Balestrieri v. Menlo Park Fire Prot. Dist.*, 800 F.3d 1094, 1103–04 (9th Cir. 2015) (leave buyback payments); *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 909 (9th Cir. 2004) (lunch periods). The payments at issue here are not similar to payments for non-working time or reimbursement for expenses.

Moreover, the FLSA's inclusion of a separate exemption specifically addressing benefits, § 207(e)(4), suggests that payments related to benefits would otherwise be considered compensation. Inclusion of a separate exemption also indicates that Congress did not understand § 207(e)(2)'s "other similar payments" clause to already exempt payments related to benefits. *See Reich*, 57 F.3d at 578. To be sure, "the subsections of § 7(e) are not mutually exclusive; that a

payment cannot be excluded under one subsection does not imply that every other subsection is inapplicable." *Id.* While the inclusion of a separate exemption addressing benefits is by no means dispositive, it provides insight into the intended scope of § 207(e)(2). As the Seventh Circuit reasoned, "we hesitate to read § 7(e)(2) as a catch-all, one that obliterates the qualifications and limitations on the other subsections and establishes a principle that all lump-sum payments fall outside the 'regular rate,' for then most of the remaining subsections become superfluous." *Id.*

For these reasons, and in light of the command that we interpret the FLSA's exemptions narrowly in favor of the employee, we conclude that the City has failed to carry its burden to demonstrate that its cash-in-lieu of benefits payments "plainly and unmistakably" constitute excludable payments under § 207(e)(2). *Cleveland*, 420 F.3d at 988. The City warns us that a ruling in favor of the Plaintiffs in this case will encourage municipalities to discontinue cash-in-lieu of benefits payment programs due to the consequent increase in overtime costs to the detriment of municipal employees. As we have observed before, such arguments are "more appropriately . . . made to Congress or to the Department of Labor, rather than to the courts." *Bratt v. Cty. of Los Angeles*, 912 F.2d 1066, 1071 (9th Cir. 1990). The potential effect of our ruling on municipal decision-making does not give us license to alter the terms of the FLSA. Accordingly, we affirm the district court's ruling that the City's cash-in-lieu of benefits payments are not properly excluded under § 207(e)(2).

### 2.  Section 207(e)(4)

The City also argues that its cash-in-lieu of benefits payments are properly excluded pursuant to § 207(e)(4). Section 207(e)(4) excludes from the regular rate of pay "contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees."

Because the City pays the unused benefits directly to its employees and not "to a trustee or third person," its cash-in-lieu of benefits payments cannot be excluded under § 207(e)(4).  We rejected a similar argument in *Local 246* when the employer had proffered no evidence that any of the payments at issue were made to a trust rather than directly to the employees because "[s]ection 207(e)(4) deals with contributions by the employer, not payments to the employee."  *Local 246*, 83 F.3d at 296.  That reasoning applies equally here.

The City urges us to find that its cash-in-lieu of benefits payments fall within the ambit of § 207(e)(4) even though the payments are not made to a trustee or third party because the payments "generally" meet the requirements of that subsection, arguing that it should not be penalized for administering its own flexible benefits plan.  But "[w]here '[a] statute's language is plain, the sole function of the courts is to enforce it according to its terms,' because 'courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'"  *Cleveland*, 420 F.3d at 989 (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).  The City's cash-in-lieu of

benefits payments are not made to a trustee or third party, and therefore those payments do not meet the requirements of § 207(e)(4). We are not at liberty to add exceptions to the clear requirements set forth in the statute for payments that "generally" satisfy the requirements of that provision. This is particularly true here, where exemptions to the FLSA's requirements are to be narrowly construed in favor of the employee. *Cleveland*, 420 F.3d at 988 (citing *Arnold*, 361 U.S. at 392). We thus have no trouble concluding that the City's cash-in-lieu of benefits payments are not properly excluded from the regular rate of pay pursuant to § 207(e)(4).

Whether benefit payments made directly to a trustee or third party pursuant to the City's Flexible Benefits Plan are properly excluded from the regular rate of pay under § 207(e)(4) is a closer question. The district court answered the question in the affirmative, a holding that the Plaintiffs challenge in their cross-appeal. The Plaintiffs argue that the Flexible Benefits Plan is not a "bona fide plan" under § 207(e)(4), and thus even payments made to a trustee or third party pursuant to the Plan are not properly excluded under that subsection. We agree.

Under § 207(e)(4), payments made to a trustee or third party "pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees" may be excluded from the regular rate of pay. The statute does not define the term "bona fide plan." The Department of Labor's interpretation of that term is set forth at 29 C.F.R. § 778.215.[2] The parties' dispute

---

[2] Like § 778.224, § 778.215 is an interpretative bulletin accorded respect under *Skidmore* to the extent that the interpretation has the "power to persuade." *Christensen*, 529 U.S. at 587 (quoting *Skidmore*, 323 U.S. at

concerns only one provision of that section:

> The plan must not give an employee . . . the option to receive any part of the employer's contributions in cash instead of the benefits under the plan: *Provided, however*, That if a plan otherwise qualified as a bona fide benefit plan under section 7(e)(4) of the Act, it will still be regarded as a bona fide plan even though it provides, as an incidental part thereof, for the payment to an employee in cash of all or a part of the amount standing to his credit . . . during the course of his employment under circumstances specified in the plan and not inconsistent with the general purposes of the plan to provide the benefits described in section 7(e)(4) of the Act.

§ 778.215(a)(5).

The Department of Labor interpreted this provision in a 2003 Opinion Letter, which states that cash-in-lieu of benefits

---

140). Because neither party challenges the district court's reliance on § 778.215 to determine whether the City's payments to a third party may be excluded under § 207(e)(4), we apply § 778.215 here without expressing an opinion as to its persuasiveness. To the extent that the City later suggests that we need not consider the Department's interpretation because the term "bona fide" in § 207(e)(4) is unambiguous, we disagree. The City cites Black's Law Dictionary, which defines "bona fide" as "1. Made in good faith; without fraud or deceit. 2. Sincere; genuine," as evidence that the term has an ordinary, unambiguous meaning. The very definition that the City quotes, however, illustrates that the term "bona fide" has multiple reasonable interpretations. The term is thus ambiguous and resort to the Department of Labor's interpretation for guidance is appropriate.

payments are "incidental" under § 778.215(a)(5) if they account for no more than 20% of the employer's total contribution amount. July 2, 2003 Dep't of Labor Op. Letter, 2003 WL 23374600, at *2. The Opinion Letter explains that the Department has historically used a 20% limitation on cash payments per employee to determine if such payments are more than "incidental" under § 778.215(a)(5). *Id.* However, the 2003 Opinion Letter modifies the application of the 20% cap:

> We continue to believe that this 20% cap is an appropriate method for assessing whether any cash payments are an incidental part of a bona fide benefits plan under 778.215(a)(5)(iii). However, because section 7(e) of the FLSA provides for the exclusion of employer contributions for benefits that are made pursuant to a bona fide *plan*, on further review we believe that the focus of the question should be whether the plan as a whole is a bona fide benefits plan. Therefore, we believe that the 20% test should be applied on a plan-wide basis. Moreover, such a plan-wide 20% test is more consistent with the regulatory language which allows "*all* or a part of the amount" standing to an employee's credit to be paid in cash, so long as it occurs under circumstances which are consistent with such a plan's primary purpose of providing benefits.

*Id.* The City urges us to disregard the 2003 Opinion Letter as insufficiently reasoned and inconsistent with § 778.215(a)(5). Like the Department's interpretative bulletins, opinion letters

are "entitled to respect" under *Skidmore* only to the extent that the agency's interpretation has the "power to persuade." *Christensen*, 529 U.S. at 587 (quoting *Skidmore*, 323 U.S. at 140). Under *Skidmore*, whether an agency's interpretation is accorded deference "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140.

We agree with the City that the 2003 Opinion Letter is unpersuasive. The Department of Labor wholly fails to explain its reasoning for the adoption of the 20% ceiling. Rather, the agency explains that it previously used a 20% cap on cash payments per employee and then discusses its reasoning for transitioning to a 20% cap on cash payments plan-wide. Nowhere does it provide any rationale for why 20% was chosen as the percentage at which cash payments are no longer an "incidental" part of a plan.

Even setting aside the 20% threshold in the 2003 Opinion Letter, however, we cannot find that the City's Flexible Benefits Plan qualifies as a "bona fide" plan under § 778.215(a)(5). Forty percent or more of the City's total contributions are paid directly to employees rather than received as benefits. While the City correctly points out that its cash-in-lieu of benefits payments are less than half of its total contributions, benefits payments constitute only a bare majority of its total contributions. The City's cash payments are simply not an "incidental" part of its Flexible Benefits Plan under any fair reading of that term. Because the City's Flexible Benefits Plan is not a "bona fide plan" under § 207(e)(4) pursuant to the requirements of § 778.215(a)(5), even the City's payments to trustees or third parties under its

Flexible Benefits Plan are not properly excluded under § 207(e)(4).

## B.  Section 207(k) partial overtime exemption

In response to the Plaintiffs' FLSA claims, the City had argued before the district court that it was entitled to a partial overtime exemption under § 207(k).  The court agreed and granted summary judgment to the City on this issue.  The Plaintiffs do not contest the City's eligibility for the exemption; the only question before us is whether the City has actually established a § 207(k) work period.

The City bears the burden of establishing that it qualifies for the exemption.  *Adair*, 185 F.3d at 1060 (citations omitted).  "Generally, the employer must show that it established a [§ 207(k)] work period and that the [§ 207(k)] work period was 'regularly recurring.'"  *Id.* (citing *McGrath v. City of Philadelphia*, 864 F. Supp. 466, 474 (E.D. Pa. 1994); 29 C.F.R. § 553.224).  "Whether an employer meets this burden is normally a question of fact."  *Id.* (citing *Spradling v. City of Tulsa*, 95 F.3d 1492, 1505 (10th Cir. 1996); *Barefield v. Vill. of Winnetka*, 81 F.3d 704, 710 (7th Cir. 1996)).

It is undisputed that the City adopted an eighty-hour/fourteen-day work period for its police officers at least as early as 2003 and that the City has paid overtime in accordance with this work period since at least 1994.  Nor do the Plaintiffs dispute that the City memorialized its adoption of the eighty-hour/fourteen-day work period in a 2003 City resolution and restated it in the City's Salary, Compensation and Benefit Policy Manual, dated July 3, 2010, and in a 2005–2007 Memorandum of Understanding between the City

and the Plaintiffs' collective bargaining unit. The Plaintiffs nonetheless argue that the City does not qualify for a § 207(k) exemption because the City does not reference § 207(k) in any of these documents. They contrast the City's references to its work period for police officers with language in the City's Salary, Compensation and Benefit Policy Manual expressly stating that the City and the firefighters' collective bargaining unit "agree to use the 7k partial overtime exemption."

An employer need not expressly identify § 207(k) when establishing a § 207(k) work period in order to qualify for the exemption. In *Adair*, we held that the employer carried its burden to show that it had established a § 207(k) exemption "when it specified the work period in the [Collective Bargaining Agreement] and when it actually followed this period in practice." 185 F.3d at 1061. The Collective Bargaining Agreement read, "[f]or purposes of complying with the Fair Labor Standards Act, the Patrol Division work period shall be eight days and the Detective Division seven days." *Id.* at 1060 (alteration in original) (citations omitted). While the Plaintiffs attempt to distinguish *Adair* by pointing to that provision's specific reference to the FLSA, we placed no weight on this language when discussing whether the employer established the § 207(k) exemption. All we required then—and all we require now—is that the employer show that it established a § 207(k) work period and that the § 207(k) work period was regularly recurring. *Id.* (citations omitted). Specific reference to § 207(k) is not necessary to satisfy this standard. Consistent with our sister circuits, we decline to require more of employers to qualify for the § 207(k) exemption. *See Rosano v. Twp. of Teaneck*, 754 F.3d 177, 187–88 (3d Cir. 2014); *Calvao v. Town of Framingham*, 599 F.3d 10, 16–17 (1st Cir. 2010); *Brock v.*

*City of Cincinnati*, 236 F.3d 793, 810 (6th Cir. 2001); *Freeman v. City of Mobile*, 146 F.3d 1292, 1297 n.3 (11th Cir. 1998); *Spradling*, 95 F.3d at 1505; *Barefield*, 81 F.3d at 710; *see also Milner v. Hazelwood*, 165 F.3d 1222, 1223 (8th Cir. 1999) (per curiam) (holding that employer need not establish the exemption through public declaration).

The City has satisfied the criteria for application of the § 207(k) exemption by adopting an eighty-hour/fourteen-day work period for its law enforcement officers and by paying overtime in accordance with that period since 1994—facts that are not disputed by the Plaintiffs. Accordingly, we affirm the district court's grant of summary judgment to the City on this issue.

## C.  Liquidated damages

The Plaintiffs also challenge the district court's finding that they are not entitled to liquidated damages. An employer who violates the FLSA "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." § 216(b). However, if the employer shows that it acted in "good faith" and that it had "reasonable grounds" to believe that its actions did not violate the Act, "the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216." § 260. To avail itself of this defense, the employer must "establish that it had 'an honest intention to ascertain and follow the dictates of the Act' and that it had 'reasonable grounds for believing that [its] conduct complie[d] with the Act.'" *Local 246*, 83 F.3d at 298 (alterations in original) (quoting *Marshall v. Brunner*,

668 F.2d 748, 753 (3d Cir. 1982)). If an employer fails to satisfy its burden under § 260, an award of liquidated damages is mandatory. *Id.* at 297 (citing *EEOC v. First Citizens Bank of Billings*, 758 F.2d 397, 403 (9th Cir. 1985)). Whether the employer acted in good faith and whether it had objectively reasonable grounds for its action are mixed questions of fact and law. *Bratt*, 912 F.2d at 1071 (citing 29 C.F.R. § 790.22(c)). Questions involving the application of legal principles to established facts are reviewed de novo. *Id.*

To establish its good faith, the City relies exclusively on the deposition testimony of Linda Tang, an employee in its payroll department, who testified about the City's process for determining whether a particular payment must be included in the regular rate of pay. Ms. Tang testified that the City's payroll and human resources departments work together to determine whether a particular type of payment should be included in the calculation of the regular rate of pay when the payment is first provided. After a payment's initial classification, the City conducts no further review of a payment's designation, although Ms. Tang testified that the human resources department notifies the payroll department if it learns of new authority concerning the classification of a payment. Because the cash-in-lieu of benefits payments were classified as a "benefit" in the payroll system during this initial review, they have never been included in the calculation of the regular rate of pay.

Such paltry evidence is not sufficient to carry the City's burden to demonstrate that it acted in good faith. The City has presented no evidence of what steps the human resources department took to determine that the cash-in-lieu of benefits payments were appropriately classified as a "benefit" under

the FLSA and excluded from the calculation of the regular rate of pay. That the payroll department consulted the human resources department to find out how a given payment should be categorized in the City's payroll system sheds no light on *how* either department determined that the payment's designation as a "benefit" complied with the FLSA. An employer who "'failed to take the steps necessary to ensure [its] [] practices complied with [FLSA]'" and who "offers no evidence to show that it *actively endeavored* to ensure such compliance" has not satisfied § 260's heavy burden. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003) (alterations in original) (emphasis added) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)); *see also Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 920 (9th Cir. 2003) (upholding an award of liquidated damages where the employer believed that it was not required to pay overtime because employees divided their hours between two legal entities that were operated together, but had failed to consult an objective authority or seek advice on the legality of its position).

Grasping at straws, the City argues that its good faith is also demonstrated by its inclusion of other types of payments in the regular rate of pay and its payment of overtime more generously than the FLSA requires. These arguments miss the mark. Evidence that the City complied with its other obligations under the Act or that it agreed to pay overtime more generously than required by law do not demonstrate what the City has done to ascertain whether its classification of the payments at issue here complied with the FLSA.

Because the City has failed to demonstrate that it attempted to comply with the Act in good faith, we conclude that the Plaintiffs are entitled to liquidated damages and

remand this case to the district court to enter judgment for the Plaintiffs accordingly.

## D. Statute of limitations

Pursuant to § 255(a), the two-year statute of limitations for actions under the FLSA may be extended to three years if an employer's violation is deemed "willful." *Alvarez*, 339 F.3d at 908 (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988); § 255(a)). A violation is willful if the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *Chao*, 346 F.3d at 918 (alteration in original) (quoting *McLaughlin*, 486 U.S. at 133). An employer need not violate the statute knowingly for its violation to be considered "willful" under § 255(a), *Alvarez*, 339 F.3d at 908, although "merely negligent" conduct will not suffice, *McLaughlin*, 486 U.S. at 133. The three-year statute of limitations may be applied "where an employer disregarded the very 'possibility' that it was violating the statute," *Alvarez*, 339 F.3d at 908–09 (citing *Herman*, 172 F.3d at 141), "although [a court] will not presume that conduct was willful in the absence of evidence," *id.* at 909 (citing *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990)). Like its determination regarding liquidated damages, a district court's determination of willfulness under § 255(a) is a mixed question of fact and law, with de novo review of the district court's application of the law to established facts. *See id.* at 908 (citations omitted).

An employer's violation of the FLSA is "willful" when it is "on notice of its FLSA requirements, yet [takes] no affirmative action to assure compliance with them." *Id.* at 909; *see also Haro v. City of Los Angeles*, 745 F.3d 1249, 1258 (9th Cir. 2014) (citing *Alvarez*, 339 F.3d at 909). Such

is the case here.  Ms. Tang's testimony regarding the City's process for designating payments as either a "premium" or a "benefit" to distinguish between payments included in the City's calculation of an officer's regular rate of pay shows that the City was aware of its obligations under the FLSA. And despite notice of the Act's requirements, the record yields no evidence of affirmative actions taken by the City to ensure that its classification of its cash-in-lieu of benefits payments complied with the FLSA.  Indeed, it is undisputed that the City failed to investigate whether its exclusion of cash-in-lieu of benefits payments from the regular rate of pay complied with the FLSA at any time following its initial determination that the payments constituted a benefit.

To be sure, as the district court correctly noted, there was no case authority on the proper treatment of cash-in-lieu of benefits payments under the FLSA in this circuit.  But the absence of binding authority directly on point is not dispositive here.  It is likely to be the exception, rather than the rule, that controlling case law addresses the precise question faced by an employer trying to determine its obligations under the FLSA, and thus only a small subset of FLSA violations would be considered willful if the existence of binding authority on the subject were our only consideration.    More to the point here, the absence of controlling case authority cannot be dispositive when the City has put forth no evidence that it ever looked to see whether such authority existed.  *Cf. Serv. Emps. Int'l Union, Local 102 v. Cty. of San Diego*, 60 F.3d 1346, 1355–56 (9th Cir. 1994) (finding that evidence that employer relied on substantial legal authority and consulted with experts and the Department of Labor on its obligations under the FLSA established that the employer's violation was not willful).

The City has put forth no evidence of any actions it took to determine whether its treatment of cash-in-lieu of benefits payments complied with the FLSA, despite full awareness of its obligation to do so under the Act. We therefore conclude that its violation of the FLSA was willful and that the Act's three-year statute of limitations applies. We accordingly reverse the district court's ruling concerning the statute of limitations, and remand the matter for further proceedings.

## IV. CONCLUSION

For the reasons set forth above, we hold that the City's cash-in-lieu of benefits payments are not properly excluded from the calculation of the regular rate of pay under either § 207(e)(2) or (e)(4). And because the City's Flexible Benefits Plan is not a "bona fide plan" under § 207(e)(4), even the City's payments to trustees or third parties may not be excluded from the regular rate of pay under that subsection. The City does, however, qualify for the partial overtime exemption in § 207(k). We further hold that the City has not shown that it attempted to comply with the FLSA in good faith and that the Plaintiffs are therefore entitled to liquidated damages under the Act. Finally, because the City's violation of the FLSA was willful, we hold that the Act's three-year statute of limitations applies. We therefore affirm in part, reverse in part, and remand this matter to the district court for further proceedings and entry of a judgment consistent with this opinion. Each party shall bear its own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

OWENS, Circuit Judge, with whom TROTT, Circuit Judge, joins, concurring:

I concur fully in the majority's opinion. I write separately because I believe that our willfulness caselaw in the context of the FLSA statute of limitations is off track.

In *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988), the Supreme Court stressed that willfulness was more than mere negligence, and that "[i]f an employer acts unreasonably, but not recklessly, in determining its legal obligation," the two-year FLSA statute of limitations would apply. *Id*. at 132–35 & n.13. In formulating this definition, the Court emphatically rejected the so-called "*Jiffy June*" standard that expanded the statute of limitations anytime "an employer knew that the FLSA 'was in the picture.'" *Id*. at 132 (quoting *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir. 1972)); *see also Hazen Paper Co. v. Biggins*, 507 U.S. 604, 615 (1993) (noting that "[s]urprisingly, the Courts of Appeals continue to be confused about the meaning of the term 'willful' in" the Age Discrimination in Employment Act, even though *McLaughlin* "[o]nce again . . . rejected the 'in the picture standard'").

In *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908–09 (9th Cir. 2003), *aff'd on other grounds*, 546 U.S. 21 (2005), a panel of this court correctly cited *McLaughlin* when analyzing an FLSA willfulness question. But then the panel concluded that the employer acted willfully because it "was on notice of its FLSA requirements, yet took no affirmative action to assure compliance with them," and that it "'could easily have inquired into' the meaning of the relevant FLSA terms and the type of steps necessary to comply therewith." *Id*. at 909

(quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)).

This gloss on *McLaughlin* comes very close to a qyburnian resurrection of the *Jiffy June* standard. And it is this gloss – and not the tougher standard that the Supreme Court set out – which compels me to join Part III.D of the majority opinion. Absent *Alvarez*, I would affirm the district court on the statute of limitations question.