**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

EUGENE SCALIA, Secretary of Labor, U.S. Department of Labor,
*Plaintiff-Appellee,*

v.

EMPLOYER SOLUTIONS STAFFING GROUP, LLC, a limited liability company; EMPLOYER SOLUTIONS STAFFING GROUP II, LLC, a limited liability company; EMPLOYER SOLUTIONS STAFFING GROUP III, LLC, a limited liability company; EMPLOYER SOLUTIONS STAFFING GROUP IV, LLC, a limited liability company,
*Defendants-Appellants.*

No. 18-16493

D.C. No.
2:16-cv-02916-ROS

OPINION

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted February 3, 2020
Phoenix, Arizona

Filed March 2, 2020

Before:  Susan P. Graber, Andrew D. Hurwitz,
and Eric D. Miller, Circuit Judges.

Opinion by Judge Graber

## SUMMARY[*]

### Fair Labor Standards Act

The panel affirmed the district court's summary judgment entered in favor of the Secretary of Labor in an action challenging four companies' failure to pay overtime to employees who worked more than 40 hours in a workweek in violation of the Fair Labor Standards Act ("FLSA").

Employer Solutions Staffing Companies ("ESSG") contracts with other companies to recruit employees and place them at jobsites for which ESSG handled administrative tasks.  ESSG conceded that it qualified as an "employer" of the recruited employees under FLSA.  ESSG contracted with Sync Staffing, which placed the recruited employees at a jobsite run by TBG Logistics.  One of ESSG's employees, Michaela Haluptzok, was responsible for processing the TBG Logistics payroll.  A Sync employee told Haluptzok to pay overtime hours as "regular" hours, which was a FLSA violation.

Consistent with the law of agency, the panel imputed Haluptzok's actions to ESSG.  The panel held that because

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Haluptzok admitted that she knew the recruited employees were not being paid overtime owed to them, the district court correctly found no dispute of material fact as to ESSG's ultimate liability under the FLSA.

Ordinarily, a two-year statute of limitations applies to claims under FLSA, but for a "willful violation," the limitations period extends to three years.  The panel held that through its agent, Haluptzok, ESSG recklessly disregarded the possibility that it was violating FLSA.  Accordingly, the three-year statute of limitations applied to the Secretary's claim, making the action timely.

FLSA mandates liquidated damages in an amount equal to the unpaid overtime compensation claims unless the employer acted in "good faith" and had "reasonable grounds" to believe it was not violating FLSA.  The panel held that because ESSG's violations were willful, it could not have acted in good faith. Accordingly, the panel affirmed the award of liquidated damages.

The panel held that there was no indication that Congress intended to create a right to contribution or indemnification for liable employers from another employer under FLSA. The panel further held that no right to contribution or indemnification arose under federal common law.

**COUNSEL**

Michael R. Shebelskie (argued), Hunton Andrews Kurth LLP, Richmond, Virginia; Rebecca J. Levine, Rebecca Levine Law PLLC, Edina, Minnesota; for Defendants-Appellants.

Katelyn J. Poe (argued), Attorney; Paul L. Frieden, Counsel for Appellate Litigation; Jennifer S. Brand, Associate Solicitor; Kate S. O'Scannlain, Solicitor of Labor; United States Department of Labor, Washington, D.C.; for Plaintiff-Appellee.

**OPINION**

GRABER, Circuit Judge:

Employer Solutions Staffing Group and three related companies (collectively, "ESSG")[1] appeal from the summary judgment entered in favor of the Secretary of Labor in this action challenging ESSG's failure to pay overtime to employees who worked more than 40 hours in a workweek, in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219. ESSG also disputes the dismissal of its cross-claims against other defendants below for indemnification or contribution. We affirm.

BACKGROUND

ESSG, a staffing company, contracts with other companies to recruit employees and place them at jobsites for

---

[1] Four related companies with nearly identical names are defendants here; they usually refer to themselves using the singular "ESSG."

which ESSG handles administrative tasks, such as payroll processing. ESSG concedes that it qualifies as an "employer" of the recruited employees under the FLSA, 29 U.S.C. § 203(d).

In 2012, ESSG contracted with Sync Staffing, which placed the recruited employees at a jobsite run by TBG Logistics, where the employees unloaded deliveries for a grocery store. TBG maintained a spreadsheet of the employees' hours. For each pay period in November 2012 and thereafter, TBG sent the spreadsheet to Sync, which forwarded it to ESSG.

Only one of ESSG's employees, Michaela Haluptzok, was responsible for processing the TBG payroll. ESSG trained Haluptzok on the FLSA's requirements. The first time that Haluptzok received one of the spreadsheets, she prepared and sent to Sync a report showing that employees who had worked more than 40 hours per week would receive overtime pay for those hours. But when a Sync employee called Haluptzok and told her—without explaining why this action would be appropriate—to pay all of the hours as "regular hours" instead of overtime, Haluptzok complied.

To follow the Sync employee's instructions, Haluptzok had to dismiss numerous error messages from Defendant's payroll software. Haluptzok understood that not paying overtime for the qualifying employees triggered the error messages, but she disregarded the messages anyway. After processing her first spreadsheet in this manner, Haluptzok did the same thing for every future spreadsheet. ESSG's relationship with TBG and Sync ended on July 27, 2014; by that date, more than 1,000 violations had occurred in which employees did not receive their earned overtime pay.

The Secretary sued ESSG, TBG, Sync, and another company in August 2016, more than two years after the final overtime violation occurred.  ESSG brought cross-claims for contribution or indemnification against the other defendants. The district court dismissed those claims under Federal Rule of Civil Procedure 12(b)(6).  The district court also denied Defendant's motion to file a third-party complaint seeking contribution from a grocery store where some recruited employees worked.   The Secretary reached consent judgments with the other companies, so only ESSG remained in the case when the Secretary moved for summary judgment. The district court granted the Secretary's motion, held that ESSG had violated the FLSA willfully, and ordered ESSG to pay approximately $78,500 in unpaid overtime wages plus an equal amount in liquidated damages.

## STANDARD OF REVIEW

We review de novo a grant of summary judgment.  *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016).  We also review de novo "the application of legal principles to established facts."  *Id.* at 905.  Finally, we review de novo a dismissal under Rule 12(b)(6).   *Fields v. Twitter, Inc.*, 881 F.3d 739, 743 (9th Cir. 2018).

## DISCUSSION

We first address ESSG's arguments that it cannot be liable for the actions of a low-level employee such as Haluptzok and that, regardless, any FLSA violations were not willful and instead occurred in good faith.  We then discuss whether the FLSA allows a liable employer to seek indemnification or contribution from other employers.

A. *Liability*

Haluptzok knew that the relevant employees were working more than 40 hours per week without receiving overtime pay. ESSG chose Haluptzok as its agent for payroll processing, so it cannot disavow her actions merely because she lacked a specific job title or a certain level of seniority in the company. *See United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) ("As an inanimate entity, a corporation must act through agents." (quoting *CFTC v. Weintraub*, 471 U.S. 343, 348 (1985))); *see also* Restatement (Third) of Agency § 1.01 (defining "agent" as one who "act[s] on the principal's behalf and subject to the principal's control"). Allowing ESSG to evade liability simply because none of its "supervisors" or "managers" processed the payroll would create a loophole in the FLSA and run counter to the statute's purpose of "protect[ing] all covered workers from substandard wages and oppressive working hours." *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1150 (9th Cir. 2000) (internal quotation marks omitted). Consistent with the law of agency, we impute Haluptzok's actions to ESSG. Because Haluptzok admitted that she knew the recruited employees were not being paid overtime owed to them, the district court correctly found no dispute of material fact as to ESSG's ultimate liability under the FLSA. *See Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) ("[A]n employer who knows or should have known that an employee is or was working overtime must comply with the provisions of [29 U.S.C. §] 207[(a)].").

B. *Willfulness*

Ordinarily, a two-year statute of limitations applies to claims under the FLSA. 29 U.S.C. § 255(a). But for a

"willful violation," the limitations period extends to three years. *Id.* Because the Secretary sued ESSG more than two years after the last violation, ESSG must have acted willfully for this action to be timely.

A violation is willful when "the employer either knew or showed reckless disregard for . . . whether its conduct was prohibited by the [FLSA.]" *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). For more than a year, Haluptzok dismissed the payroll software's repeated warnings that employees might not be receiving earned overtime pay. Although she (at least initially) acted on Sync's instructions not to pay overtime, she never received any explanation from Sync that justified dismissing the software's error messages. Thus, through its agent, ESSG recklessly "disregarded the very possibility that it was violating the statute." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908–09 (9th Cir. 2003) (internal quotation marks omitted).[2] Accordingly, the three-year statute of limitations applies to the Secretary's claim, making this action timely.

C.  *Liquidated Damages*

The FLSA mandates liquidated damages in an amount equal to the unpaid overtime compensation unless an employer acted in "good faith" and had "reasonable grounds"

---

[2] ESSG questions whether our decision in *Alvarez* comports with the "reckless disregard" standard set forth in *Richland Shoe*. *See Flores v. City of San Gabriel*, 824 F.3d 890, 907–08 (9th. Cir. 2016) (Owens, J., concurring). Of course, we are not free to revisit *Alvarez*. *See Miller v. Gammie*, 335 F.3d 889, 892–93 (9th Cir. 2003) (en banc). In any event, based on Haluptzok's admissions, we have little trouble concluding that ESSG recklessly disregarded its obligations under the FSLA even under the strictest reading of *Richland Shoe*.

to believe that it was not violating the FLSA.  29 U.S.C. §§ 216(b), 260.  Because ESSG's violations were willful, it could not have acted in good faith.  *See Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 920 (9th Cir. 2003) ("[A] finding of good faith is plainly inconsistent with a finding of willfulness.").

ESSG insists that an employer can act in good faith while willfully violating the FLSA.  But, as a three-judge panel we cannot overrule *Chao* in the absence of intervening en banc or Supreme Court precedent.  *Miller v. Gammie*, 335 F.3d 889, 892–93 (9th Cir. 2003) (en banc).  Indeed, *Chao* aligns with precedent in most other circuits that have reached the issue.  *See Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1166 (11th Cir. 2008) (agreeing with *Chao*, joining "the majority side of the circuit split on this issue," and collecting cases).  Thus, we affirm the award of liquidated damages.

D.  *Indemnification/Contribution*

The FLSA's text does not expressly address whether an employer may seek indemnification or contribution from another employer, but ESSG contends that the statute implicitly permits those remedies.  Alternatively, ESSG asks us to recognize those remedies under federal common law.

1.  *Whether the FLSA Implicitly Allows Indemnification or Contribution*

"In determining whether a federal statute that does not expressly provide for a particular private right of action nonetheless implicitly created that right, our task is one of statutory construction." *Nw. Airlines, Inc. v. Transp. Workers*

*Union*, 451 U.S. 77, 91 (1981).  We must ascertain "whether Congress intended to create the private remedy—for example, a right to contribution—that the [litigant] seeks to invoke." *Id.*  In recent decades, the Supreme Court has adopted a "cautious course before finding implied causes of action." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017).  Four factors guide our inquiry:  (1) the statute's text; (2) "the underlying purpose and structure of the statutory scheme"; (3) "the likelihood that Congress intended to supersede or to supplement existing state remedies"; and (4) the statute's legislative history.  *Nw. Airlines*, 451 U.S. at 91; *accord Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981).

ESSG largely ignores the relevant factors and argues that, because employers face joint and several liability under the FLSA, they necessarily must have a right to seek contribution from one another.  Defendant emphasizes 29 C.F.R. § 791.2 (2019), which provides that "all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act."  A newer, not-yet-effective version of this regulation refers expressly to joint and several liability:  "[A] joint employer is jointly and severally liable with . . . any other joint employers for compliance with all of the applicable provisions of the Act." *Id.* (2020).[3]  Of course, the regulation does not clarify what Congress intended when it enacted the FLSA in 1938; it provides only the Secretary's current interpretation of the FLSA.

But the Supreme Court has rejected the argument that joint and several liability always goes hand-in-hand with

---

[3] The newer version takes effect on March 16, 2020.

contribution.  *See Tex. Indus.*, 451 U.S. at 646 ("Nor does the judicial determination that defendants should be jointly and severally liable suggest that courts also may order contribution, since joint and several liability simply ensures that the plaintiffs will be able to recover the full amount of damages from some, if not all, participants.").  And the common law "provided no right to contribution among joint tortfeasors." *Id.* at 634.  ESSG does not merely owe a debt to its employees; it committed a wrong against them.  Thus, we remain unpersuaded that Congress necessarily codified a right to contribution when it enacted the FLSA.

We turn now to the four factors.  The Second Circuit, applying the four-factor framework from *Northwest Airlines*, has held that the FLSA does not provide a right to contribution or indemnification for liable employers. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 144 (2d Cir. 1999).  We agree.

First, the FLSA's text says nothing about a right to contribution or indemnification for employers who have violated the statute.  That silence "is not dispositive if, among other things," the statute's text suggests that it was "enacted for the special benefit of a class of which [ESSG] is a member." *Nw. Airlines*, 451 U.S. at 91–92.  But, the FLSA's text suggests exactly the opposite.  *See* 29 U.S.C. § 202 (noting the congressional policy behind the FLSA of eliminating "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers").

Second, as its text suggests, the FLSA's "central purpose" is to "enact minimum wage and maximum hour provisions designed to protect employees," not employers. *Williamson*,

208 F.3d at 1154; *see also Herman*, 172 F.3d at 144 (stating that the FLSA "was designed to regulate the conduct of employers for the benefit of employees"). In other words, ESSG belongs to the class whose conduct Congress intended to control "for the protection and benefit *of an entirely distinct class*." *Tex. Indus.*, 451 U.S. at 639 (quoting *Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 37 (1977)). The FLSA's statutory scheme resembles those of the Equal Pay Act and Title VII of the Civil Rights Act, for which *Northwest Airlines* found no implied right to contribution for employers. Similarly, the FLSA "has a comprehensive remedial scheme as shown by the 'express provision for private enforcement in certain carefully defined circumstances,'" *Herman*, 172 F.3d at 144 (quoting *Nw. Airlines*, 451 U.S. at 93), and for enforcement by the federal government in other circumstances, 29 U.S.C. § 217. Indeed, "broader or more comprehensive coverage of employees . . . would be difficult to frame." *United States v. Rosenwasser*, 323 U.S. 360, 362 (1945).

Third, "[t]he comprehensive character of the remedial scheme expressly fashioned by Congress strongly evidences an intent not to authorize additional remedies" beyond those expressly allowed under the statute. *Nw. Airlines*, 451 U.S. at 93–94. The FLSA provides "comprehensive statutory remedies," *Williamson*, 208 F.3d at 1155, and it is "not within our competence as federal judges to amend . . . comprehensive enforcement schemes" by adding private remedies that Congress never intended to allow, *Nw. Airlines*, 451 U.S. at 94.

Fourth, and finally, the FLSA's legislative history is "silent on a right to contribution or indemnification" for employers. *Herman*, 172 F.3d at 144 (collecting the relevant

legislative history).    In sum, we see no indication that Congress intended to create a right to contribution or indemnification for employers under the FLSA.

ESSG argues that allowing it to seek contribution or indemnification from other employers would advance the FLSA's purpose in various ways, including by encouraging employers to be more proactive about complying with the statute.    Maybe so, but such policy questions belong to "Congress, not the courts, to resolve." *Tex. Indus.*, 451 U.S. at 646.    "If the statute itself does not 'display an intent' to create 'a private remedy,' then 'a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.'" *Ziglar*, 137 S. Ct. at 1856 (brackets omitted) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001)).    Following the Supreme Court's "cautious course," *id.* at 1855, we decline to find an implied cause of action for contribution or indemnification under the FLSA.

> 2. *Whether  a  Right  to  Contribution  or Indemnification Arises Under Federal Common Law*

Federal courts have the authority to craft federal common law in limited circumstances.    First, we may undertake this type of lawmaking "in those few instances where 'a federal rule of decision is necessary to protect [a] uniquely federal interest.'" *Mortgs., Inc. v. U.S. Dist. Court*, 934 F.2d 209, 213 (9th Cir. 1991) (per curiam) (quoting *Tex. Indus.*, 451 U.S. at 640).    "The right of recovery from another wrongdoer, however, does not implicate any such interests." *Id.* Thus, this category does not help ESSG.

Similarly, we may create federal common law "in those areas dominated by strong national or federal concerns such as controversies between states, admiralty matters, or foreign relations." *Id.*  Plainly, this category does not apply here.

Finally, "Congress may empower federal courts to make federal common law when a statute contains sweeping language and its legislative history indicates Congress's expectation that the courts will 'give shape to the statute's broad mandate by drawing on common-law tradition.'" *Id.* (quoting *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 688 (1978)).    In *National Society of Professional Engineers*, for example, the Court addressed the Sherman Act, for which "[t]he legislative history makes it perfectly clear that [Congress] expected the courts to give shape" to the statute's broad contours.  435 U.S. at 688.  By contrast, neither the FLSA's text nor its legislative history suggests that Congress expected the courts to go beyond the "judicial interpretation of ambiguous or incomplete provisions" that proves necessary for "almost any statutory scheme."  *Nw. Airlines*, 451 U.S. at 97.

When "Congress has enacted a comprehensive legislative scheme" that includes "integrated procedures for enforcement," we presume that Congress did not intend for us "to supplement the remedies enacted."  *Mortgs.*, 934 F.2d at 213.  The FLSA is just such a comprehensive statute.  It includes procedures for both "private enforcement in certain carefully defined circumstances," *Herman*, 172 F.3d at 144 (internal quotation marks omitted), and (as in this case) enforcement by the Secretary, § 217.    Thus, this final category also does not help ESSG.

We thus join the Second Circuit in holding that the FLSA does not imply a right to contribution or indemnification for liable employers.  We also decline to make new federal common law that recognizes those rights.

**AFFIRMED.**