**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

WESCO INSURANCE COMPANY, a
Delaware corporation,

Plaintiff-Appellee,

v.

BRAD INGRAM CONSTRUCTION,

Defendant-Appellant.

No. 22-16584

D.C. No. 3:21-cv-05682-WHO

MEMORANDUM*

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted November 13, 2023
San Francisco, California

Before: S.R. THOMAS, FORREST, and MENDOZA, Circuit Judges.
Dissent by Judge FORREST.

Brad Ingram Construction ("Ingram") appeals the district court's judgment

that Ingram's insurer, Wesco Insurance Company ("Wesco"), does not have a duty

to defend Ingram in connection with injuries caused by airborne wildfire debris.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

The sole question on appeal is whether, under California law, there was any potential for coverage given the pollution exclusion provision in Ingram's insurance policy.[1]  Because we conclude that there was a potential for coverage, we reverse.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review the district court's grant of summary judgment de novo. *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016).  Likewise, "the interpretation of [an] insurance policy is a question of law for the court and is reviewed *de novo*" as well. *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999).

Because the parties are familiar with the facts and the procedural history, we will not recount them here.

## I

Under California law, insurance policies are construed in accordance with "general rules of contract interpretation" that aim to "give effect to the 'mutual intention' of the parties." *MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1212 (Cal. 2003) (quoting Cal. Civ. Code § 1636).  "The determination whether [an]

---

[1] The provision in question excludes coverage for "'Bodily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time."

2

insurer owes a duty to defend usually is made in the first instance by comparing the allegations . . . with the terms of the policy." *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 795 (Cal. 1993). Coverage provisions are "interpreted broadly so as to afford the greatest possible protection to the insured," whereas "exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon*, 73 P.3d at 1213 (quoting *White v. W. Title Ins. Co.*, 710 P.2d 309, 313 (Cal. 1985)). "[T]he burden is on the insurer to prove the claim is specifically excluded." *Aydin Corp. v. First State Ins. Co.*, 959 P.2d 1213, 1215 (Cal. 1998).

Applying these principles in *MacKinnon*, the California Supreme Court held that a pollution exclusion applies only to "injuries arising from events commonly thought of as pollution, i.e. environmental pollution . . . ." *MacKinnon*, 73 P.3d at 1216. To determine whether a pollution event has occurred, the reviewing court should consider both the character of the injurious substance and whether exposure occurred due to a mechanism specified in the policy. *Id*. at 1213–16. Under *MacKinnon*, neither the substance nor the mechanism of exposure is dispositive; they are to be considered "in conjunction" with one another. *Id*. at 1215. *See Garamendi v. Golden Eagle Ins. Co.*, 25 Cal. Rptr. 3d 642, 646–48 (Cal. Ct. App. 2005); *Ortega Rock Quarry v. Golden Eagle Ins. Corp.*, 46 Cal. Rptr. 3d 517, 525–26 (Cal. Ct. App. 2006); *Cold Creek Compost, Inc. v. State Farm Fire & Cas.*

3

*Co.*, 68 Cal. Rptr. 3d 216, 224–25 (Cal. Ct. App. 2007); *The Villa Los Alamos Homeowners Assn. v. State Farm Gen. Ins. Co.*, 130 Cal. Rptr. 3d 374, 383–85 (2011); *JRK Prop. Holdings, Inc. v. Colony Ins. Co*, 313 Cal. Rptr. 3d 895, 905–09 (Cal. Ct. App. 2023).

In addition, under California law, an insurer's duty to defend and its duty to indemnify are not synonymous. *Certain Underwriters at Lloyd's of London v. Superior Ct.*, 16 P.3d 94, 102–03 (Cal. 2001). The duty to defend is broader than the duty to indemnify. *Id.* "An insurer has a duty to defend when the policy is ambiguous and the insured would reasonably expect the insurer to defend him or her against the suit based on the nature and kind of risk covered by the policy, or when the underlying suit potentially seeks damages within the coverage of the policy." *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 959 P.2d 265, 273 (Cal. 1998).

"To prevail in an action seeking declaratory relief on the question of the duty to defend, the insured must prove the existence of a *potential for coverage*, while the insurer must establish the *absence of any such potential*. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot. The duty to defend exists if the insurer becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for

4

coverage under the insuring agreement." *Delgado v. Interinsurance Exch. of Auto. Club of S. Cal.*, 211 P.3d 1083, 1086 (Cal. 2009) (internal citations and quotations omitted).

## II

In this case, a truck driver was allegedly injured by "expos[ure] . . . to clouds of toxic dust during the loading and unloading of his truck." The allegations do not specify the composition of the dust except to say that the wildfire waste consisted of "ash, debris, metal, concrete, and contaminated soil." As to the mechanism of exposure, the driver alleges that onsite workers "stirred up" the dust deposited in the environment by the fire while "load[ing] debris" and again when the debris was uncovered and "dump[ed]" at the waste facility. We conclude that while wildfire debris may be considered a "pollutant" in certain circumstances, the mechanism of exposure described in the complaint does not clearly constitute an "*event* commonly thought of as pollution." *MacKinnon*, 73 P.3d at 1216 (emphasis added).

*MacKinnon* noted that "terms such as 'commonly thought of as pollution,' or 'environmental pollution,' are not paragons of precision." *Id*. at 1217. There is no California case directly on point as to dust created or disbursed by a naturally occurring event. California courts have noted that, in considering a matter of first

5

impression, courts should be cautious of relieving an insurer of its duties under the policy. *Ortega Rock Quarry*, 46 Cal. Rptr. 3d at 528 (*quoting Pa. Nat'l Mut. Cas. Ins. Co. v. Triangle Paving, Inc.,* 973 F. Supp. 560, 566–67 (E.D.N.C. 1996)).

"Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose v. Superior Ct.*, 861 P.2d 1153, 1160 (Cal. 1994); *accord Anthem Elecs., Inc. v. Pac. Emps. Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002). Given the test in *MacKinnon*, which has not been applied in sufficiently analogous cases, and the fact that the pollution exclusion does not apply unambiguously to the driver's injuries, there existed a potential for coverage under the insurance policy, and Wesco had a duty to defend the litigation. We do not opine as to whether Wesco would have had a duty to indemnify, if damages were awarded.

**REVERSED.**

*Wesco Insurance Company v. Brad Ingram Construction*, No. 22-16584
Forrest, J., dissenting:

While I agree with the majority's statement of the governing legal standard, I disagree with its application of that standard. As the majority explains, the California Supreme Court has held that a pollution exclusion like the one at issue here applies only to "injuries arising from events commonly thought of as pollution, i.e. environmental pollution." *MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1216 (Cal. 2003), *as modified on denial of reh'g* (Sept. 17, 2003). In determining whether an event would be understood as an act of pollution, courts consider two factors: the substance (alleged pollutant) and the mechanism of exposure of the substance; neither factor is itself dispositive. *Id.* at 1216–17; *Villa Los Alamos Homeowners Ass'n v. State Farm Gen. Ins. Co.*, 130 Cal. Rptr. 3d 374, 380–81 (Ct. App. 2011). California caselaw indicates that the circumstances at issue here would be commonly understood as an act of pollution, thus triggering the pollution exclusion, as the district court held. Therefore, I respectfully dissent.

I.

Turning first to the substance at issue, the underlying complaint alleges that the employee's injury stemmed from exposure to "clouds of toxic dust." The dust directly resulted from a massive wildfire, but the "clouds" of particles that allegedly

caused injury were created when the dust was disturbed by the wildfire cleanup project.[1]

Even though the dust was originally created by a wildfire and may consist of natural material, that does not prevent it from being part of a pollution event. California courts have recognized that natural materials can be pollutants. *See Ortega Rock Quarry v. Golden Eagle Ins. Corp.*, 46 Cal. Rptr. 3d 517, 525 (Ct. App. 2006) ("[H]azardous substances are not rendered non-polluting by the fact that they are naturally occurring . . . ." (quoting *Gold Fields Am. Corp. v. Aetna Cas. & Sur. Co.*, 744 N.Y.S. 2d 395, 396 (2002))). In *Ortega Rock Quarry*, a quarry operator placed fill dirt along a road after highwaters washed out portions of the road. 46 Cal. Rptr. 3d at 519–520. Even though the rocks and dirt were natural materials, the California Court of Appeal held that they were nonetheless a pollutant given the regulation of waterways and that these materials were placed by human activity. *Id.* at 525–26. Likewise, in *Cold Creek Compost, Inc. v. State Farm Fire & Casualty Co.*, the California Court of Appeal held that "[h]eavy clouds of dust from . . . 18 wheeler double-wide trucks" triggered the pollution exclusion despite arguments

---

[1]In the opening brief, Appellant Brad Ingram Construction (Ingram) argues that the underlying injury may have been caused by bacteria. The underlying complaint, however, makes no mention of bacteria and instead alleges the injury was caused by toxic dust and debris. "Determination of the duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy." *Scottsdale Ins. Co. v. MV Transp.*, 115 P.3d 460, 466 (Cal. 2005).

that "dust is not commonly thought of as a pollutant." 68 Cal. Rptr. 3d 216, 220, 229 (Ct. App. 2007). The court explained that "[d]ust has been held to be a pollutant within the meaning of the pollution exclusion in California and elsewhere, and dust is recognized and regulated as a form of air pollution under California environmental law." *Id.* at 229 (citations omitted); *see also id.* at 226 n.5 (applying a pollution exclusion to compost odors from "100% natural, organic materials" and rejecting the suggestion that the odors could not qualify as a pollutant given their "natural" origin); *Garamendi v. Golden Eagle Ins. Co.*, 25 Cal. Rptr. 3d 642, 648 (Ct. App. 2005) (applying the pollution exclusion to silica dust, a "natural product").

These cases establish that simply because the substance at issue is dust does not prohibit it from being a pollutant. And the dust alleged here is not simply dirt—it is toxic dust located in a heavily regulated cleanup area.

The context at issue further informs this analysis. While a wildfire created the toxic dust, the government required that prime contractors performing the cleanup "be certified for hazardous substance removal" because the debris "was known to be a health hazard." Workers at the cleanup sites wore protective clothing and respirators. On-site crews were expected to don and doff protective equipment in designated decontamination zones. Air monitoring stations were set up around the community to track airborne toxins.

The policy defines pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Given the level of precautions here, concluding that the dust is a pollutant is a far cry from the hypotheticals considered unreasonable in *MacKinnon*. *See* 73 P.3d at 1214 (noting the absurdity in applying the pollutant label to pool chlorine—an irritant—used for its ordinary purpose if it were to cause an allergic reaction).

## II.

Turning to the mechanism that caused the alleged injury, *see Villa Los Alamos*, 130 Cal. Rptr. 3d at 383, the pollution exclusion applies where a "discharge, dispersal, seepage, migration, release or escape" of a pollutant occurs. The parties focus on different acts of dispersal or release. Appellee Wesco Insurance Company (Wesco) contends the cleanup project is the proper focus, while Ingram focuses on the wildfire. But the complaint makes clear that the cleanup project is the proper focus because it alleges the injury stemmed from the cleanup effort "stirr[ing] up" toxic dust.

Focusing on the cleanup, Ingram argues that there was no "release"[2] because the toxic material was not contained—it was "on the ground" and "open to the elements." Ingram relies on *MacKinnon*, which stated that a release implies "some

---

[2]Because the district court found a release, it did not consider whether a dispersal occurred. I do the same.

sort of freedom from containment." 73 P.3d at 1215. Ingram further argues, through dictionary definitions, that a release can only occur when there is a "protective barrier" or an escape from "a structure." This overly restrictive interpretation of "release" is not persuasive.[3] Rather, the asbestos context is instructive. A California court found a "release" when workers scraped acoustical popcorn off ceiling tiles, which released asbestos into the air. *Villa Los Alamos*, 130 Cal. Rptr. 3d at 384–86. "When asbestos is *disturbed* by construction and related activities, the result is commonly referred to as a 'release' of asbestos . . . ." *Id.* at 384 (emphasis added); *see also* Cal. Lab. Code § 6501.8(a) ("'[A]sbestos-related work' means any activity which by *disturbing* asbestos-containing construction materials may *release* asbestos fibers *into the air* . . . ." (emphasis added)).

Here, the toxic dust was on the ground, and it was then "stirred up" by the massive cleanup operation, which released the dust into the air to create "clouds" of dust particles. *Cf. Cold Creek Compost*, 68 Cal. Rptr. 3d at 224–25 (finding odors emanating into the air from composting materials to be a release absent discussion or reference to a protective barrier). That the underlying complaint alleges only one worker was injured is of no moment. *Cf. Am. Cas. Co. of Reading, Pa. v. Miller*, 71

---

[3]Similarly, the California Supreme Court found it absurd to describe the normal spraying of pesticides in a residential area as a "release." *MacKinnon*, 73 P.3d at 1215–16. This was so even though the pesticides were likely sprayed from some sort of containment. Accordingly, a "protective barrier" is not solely determinative when considering a release.

Cal. Rptr. 3d 571, 581 (Ct. App. 2008) ("The test in *MacKinnon* is not based upon the extent of injury, but upon the type of pollutant and how it is released into the environment."). Nor does it matter here that the injury involved an employee injured through his employment. *Cf. Garamendi*, 25 Cal. Rptr. 3d at 644 (applying the exclusion to claims brought by workers injured by silica dust throughout their employment).

### III.

Considering the substance and the mechanism of exposure together, a reasonable insured would view the circumstances alleged to have caused injury to be "an act of pollution." *MacKinnon*, 73 P.3d at 1217. The activity in *Villa Los Alamos* was "a commercial operation, namely the removal of asbestos-containing ceiling material by a licensed general contractor, work that is tightly regulated and entails notification, and highly technical protocols for asbestos removal, containment and waste disposal." 130 Cal. Rptr. 3d at 386. Likewise, here the wildfire cleanup was a regulated operation in part because of contamination and human health concerns. Therefore, I would affirm the district court's conclusion that the pollution exclusion applies, and Wesco does not have a duty to defend Ingram against the underlying action. I respectfully dissent.